**[J-27-2017]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | |
|---|---|
| MATTHEW RANCOSKY, ADMINISTRATOR DBN OF THE ESTATE OF LEANN RANCOSKY AND MATTHEW RANCOSKY, EXECUTOR OF THE ESTATE OF MARTIN L. RANCOSKY, <br><br> Appellee <br><br> v. <br><br> WASHINGTON NATIONAL INSURANCE COMPANY, AS SUCCESSOR BY MERGER TO CONSECO HEALTH INSURANCE COMPANY, FORMERLY KNOWN AS CAPITAL AMERICAN LIFE INSURANCE COMPANY, <br><br> Appellant | : No. 28 WAP 2016 <br> : <br> : Appeal from the Order of the Superior <br> : Court entered December 16, 2015 at <br> : No. 1282 WDA 2014, affirming in part <br> : and vacating in part the Judgment of the <br> : Court of Common Pleas of Washington <br> : County entered August 1, 2014, at No. <br> : 2008-11797, and remanding. <br> : <br> : ARGUED:  April 4, 2017 <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

**OPINION**

**JUSTICE BAER**                                        **DECIDED:  SEPTEMBER 28, 2017**

In this discretionary appeal, we consider, for the first time, the elements of a bad faith insurance claim brought pursuant to Pennsylvania's bad faith statute found at 42 Pa.C.S. § 8371.[1]  For the reasons set forth below, we adopt the two-part test articulated

---

[1] Section 8371 provides, in full, as follows:

§ 8371. Actions on insurance policies

(continued…)

by the Superior Court in *Terletsky v. Prudential Property & Cas. Ins. Co.*, 649 A.2d 680 (Pa. Super. 1994), which provides that, in order to recover in a bad faith action, the plaintiff must present clear and convincing evidence (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis. Additionally, we hold that proof of an insurance company's motive of self-interest or ill-will is not a prerequisite to prevailing in a bad faith claim under Section 8371, as argued by Appellant. While such evidence is probative of the second *Terletsky* prong, we hold that evidence of the insurer's knowledge or recklessness as to its lack of a reasonable basis in denying policy benefits is sufficient. Therefore, we affirm the judgment of the Superior Court, which partially vacated the trial court's judgment and remanded for further proceedings on Appellee's bad faith claim.

## I. Background[2]

---

(…continued)

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> > (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> >
> > (2) Award punitive damages against the insurer.
> >
> > (3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S. § 8371.

[2] The lengthy factual and procedural history underlying the instant dispute involves several interrelated claims and parties not relevant to the narrow question upon which review was granted. Accordingly, we recite only those facts necessary for resolution of the discrete legal issue currently before this Court.

In March of 1992, while working for the United States Postal Service ("USPS") Appellee LeAnn Rancosky ("Rancosky") purchased a cancer insurance policy as a supplement to her primary employer-based health insurance. The cancer policy was issued by Appellant Conseco Health Insurance Company ("Conseco").[3] To pay for the policy, Rancosky's employer automatically deducted bi-weekly payments of $22.00 from her paycheck.

Of particular importance to the case *sub judice*, the policy contained a waiver-of-premium provision, which excused premium payments in the event Rancosky became disabled due to cancer. The waiver-of-premium provision read, in relevant part, as follows:

> Subject to the conditions of this policy, you will not be required to make premium payments if:
>
> - you are diagnosed as having cancer more than 30 days after the Effective Date; and
>
> - you are disabled due to cancer for a continuous period of more than 90 consecutive days beginning on or after the date of diagnosis.
>
> After it has been determined, as shown below that you are disabled, we will waive your premium payments for the period of disability, except those during the first 90 days of such period.
>
> **PROOF OF DISABILITY**
>
> You must send us a physician's statement containing the following:

---

[3] Washington National Insurance Company, Conseco's successor in interest, was ultimately substituted as the defendant in this matter. However, because the lower courts and the parties have referred to "Conseco" throughout these proceedings, we will continue the convention of referring to Appellant as "Conseco." Additionally, though Rancosky died during the pendency of the instant litigation and her estate was substituted as plaintiff in this matter, for ease of discussion we will continue to refer to Appellee as "Rancosky."

- the date you were diagnosed as having cancer;

- the date you were disabled due to such cancer; and,

- the expected date, if any, such disability will end.

Plaintiff's Complaint In Civil Action, Exhibit 5, Conseco Cancer Policy at Section 5 (Reproduced Record ("R.R.") Vol. I at 115a). Additionally, Rancosky's policy provided that "disabled" means that:

- for the first 24 months you are unable to perform all the substantial and material duties of your regular occupation; and,

After 24 months, "disabled" means that:

- you are unable to work at any job for which you are qualified by reason of education, training or experience;

- you are not working at any job for pay or benefits; and

- you are under the care of a physician for the treatment of cancer.

Plaintiff's Complaint In Civil Action, Exhibit 5, Conseco Cancer Policy at Section 1 (R.R. Vol. I at 109a). Thus, pursuant to the above provisions, a policyholder who is "disabled," in that she is unable to work due to cancer, is excused from paying premiums on her policy following ninety days of such disability.

On February 4, 2003, Rancosky was admitted to the hospital due to intense abdominal pain. She was ultimately diagnosed with ovarian cancer and, over the subsequent months, underwent surgery and chemotherapy. Though, Rancosky did not return to her job with USPS following her February 4, 2003, hospital admission, she remained on her employer's payroll for several months because she had accrued unused vacation and sick days. Consequently, Conseco continued to receive payroll-deducted premiums from Rancosky until June 24, 2003, when Rancosky went on disability retirement. As the premium payments were made in arrears, and therefore

paid for the prior month's coverage, the final premium payment extended coverage under her policy to May 24, 2003.[4]

Beginning in April 2003, Rancosky made several attempts to obtain waiver-of-premium status, claiming that she was unable to work and was thus "disabled" under her policy since her admission to the hospital in February of 2003. Upon Conseco's request, on November 18, 2003, she submitted waiver-of-premium forms along with the required physician statement. Unbeknownst to Rancosky, however, the submitted physician's statement inaccurately specified her date of disability as beginning on April 21, 2003, rather than on February 4, 2003.[5] Believing that the premiums had been waived and that no further premiums were due on the policy because of her disability from cancer, Rancosky's final premium payment came from her June 24, 2003, payroll-deducted premium. Thus, over the next two years, as Rancosky experienced several recurrences of her cancer, she continued to submit claims to Conseco.

_____

[4] Utilizing February 4, 2003 as the inception of Rancosky's disability, the trial court determined that, by the time her final payroll-deducted premium was received by Conseco, the ninety-day waiting period under the waiver-of-premium provision expired. Accordingly, Rancosky did not pay any premiums following her final payroll-deducted premium on June 24 2003, believing that she was on waiver-of-premium status pursuant to her policy. As will be discussed in further detail *infra*, however, Conseco erroneously determined that her disability start date was April 21, 2003, and deemed her policy to have lapsed as of May, 24 2003, based upon her final premium payment of June 24, 2003, for non-payment of premiums within the ninety-day waiting period of the waiver-of-premium provision.

[5] Conseco did not receive this documentation until July of 2006. It is unclear, from the available record, why Conseco did not receive this correspondence until several years after Rancosky sent it. As will be discussed in further detail *infra*, the Superior Court ultimately concluded that Conseco lacked a reasonable basis for denying Rancosky benefits due to its failure to investigate adequately the discrepancy between the actual start date of her disability and the erroneous start date indicated on the physician's statement.

In early 2005, during an audit of its payroll-deducted premium policies, Conseco discovered, apparently for the first time, that Rancosky ceased making premium payments on her policy in June of 2003. Despite Rancosky's prior submissions and inquiries regarding her waiver-of-premium status in which she indicated the start date of her disability as February 4, 2003, and authorized Conseco to obtain information from her physicians and employer about her disability, Conseco informed Rancosky on January 28, 2005, that it deemed her policy to have lapsed as of May 24, 2003, the date to which her final payroll-deducted premium payment extended her coverage. Over the following months and years, Rancosky had an ongoing disagreement with Conseco as to whether she was on waiver-of-premium status, and thus entitled to continued coverage under her cancer policy. During this time, Rancosky, again reflecting February 4, 2003, as her disability start date, submitted numerous claim forms, waiver-of-premium requests, and authorizations permitting Conseco to contact her physicians, employer, or anyone else who might have information regarding her disability start date. Notwithstanding its contention that her policy had lapsed in May of 2003, Conseco paid for cancer related treatment Rancosky received in 2004 and 2005.

In 2006, however, following yet another recurrence of her cancer, Conseco denied Rancosky's claim for further benefits based upon her failure to pay premiums. In response, Rancosky sought reconsideration of Conseco's denial of benefits, again reiterating her oft-stated assertion that she was excused from paying premiums past her final payroll-deducted premium on June 24, 2003, because she was disabled within the meaning of her policy beginning on February 4, 2003, and made all required premium payments throughout the ninety-day waiting period of the waiver-of-premium provision. In evaluating Rancosky's reconsideration request, however, Conseco's review was limited to its in-house documentation, which at that time included, among voluminous

and inconsistent filings, the physician's statement that erroneously indicated the start date of her disability as April 21, 2003.

Notwithstanding Rancosky's eight separate authorizations permitting Conseco to contact her employer or any other person with information as to the actual start date of her disability, Conseco did not undertake any investigation to clarify the discrepancy between Rancosky's claimed disability date of February 4, 2003, and the physician's statement erroneously indicating April 21, 2003, as the start date of disability. Instead, it merely accepted the inaccurate information in her physician's statement that the start date of her disability was April 21, 2003, and took the position that her policy lapsed due to non-payment of premiums prior to the ninety-day waiting period under the waiver-of-premium provision. Consequently, it denied her request for reconsideration.[6]

Rancosky subsequently brought suit against Conseco, alleging, *inter alia*, breach of contract and bad faith pursuant to Section 8371. In her bad faith claim, Rancosky sought interest on her claim, punitive damages, and attorney's fees, as provided in Section 8371. The contract and bad faith claims were bifurcated, and Rancosky's bad faith claim eventually proceeded to a non-jury trial.[7] Though the trial court found that

---

[6] Conseco contends that the erroneous information from Rancosky's physicians regarding the start date of her disability supports its argument that it had a reasonable basis for denying her claim. Rancosky, in turn, argues that Conseco lacked a reasonable basis for its actions because it failed to conduct an adequate investigation to resolve the discrepancy between the erroneous physician's statement and her oft-stated assertion that she was disabled as of February 4, 2003, notwithstanding her eight separate authorizations permitting Conseco to contact her physicians and employer regarding her disability. However, as will be discussed in further detail *infra*, our analysis focuses on the legal test for bad faith claims under Section 8371 only and we remand for further proceedings so that the trial court can consider anew whether that test has been met based upon the existing record.

[7] A jury found in favor of Rancosky on her breach of contract claim and awarded damages in the amount of $31,144.50. There is no issue regarding Rancosky's contract claim currently before this Court.

Conseco was "sloppy and even negligent" in its handling of Rancosky's claim, it ultimately found in favor of Conseco on the bad faith claim. Trial Court Verdict, 7/3/2014, at 1 (R.R. Vol. VII at 2500a). In particular, the trial court concluded that Rancosky failed to demonstrate that Conseco lacked a reasonable basis for denying benefits under the cancer policy, *i.e.,* the first prong of the *Terletsky* test, because she did not prove that the insurer acted out of "some motive or self-interest or ill will." Trial Court Verdict, 7/3/2014, at 1 (R.R. Vol. VII at 2500a). Accordingly, the trial court returned a verdict in favor Conseco on Rancosky's bad faith claim.

Rancosky filed a post-trial motion in which she, *inter alia*, requested that the trial court vacate its verdict in favor of Conseco and enter judgment in her favor. Following denial of Rancosky's post-trial motions, the trial court entered judgment on both the contract and bad faith claims. Rancosky appealed to the Superior Court, arguing, *inter alia*, that the trial court misapplied the well-settled test for bad faith claims under Section 8371, namely, (1) that the defendant did not have a reasonable basis for denying benefits under the policy, and (2) that the defendant knew or recklessly disregarded its lack of a reasonable basis in denying the claim. *See Terletsky*, 649 A.2d at 689. According to Rancosky, the trial court erred as a matter of law by requiring proof that Conseco acted out of a motive of self-interest or ill-will. In Rancosky's view, the first *Terletsky* prong is an objective inquiry into whether a reasonable insurer would have denied payment of the claim under the facts and circumstances presented. She further argued that, to the extent the insurer's subjective motivation has any relevance, it is merely potentially probative of the second *Terletsky* prong, rather than a requirement for prevailing in a bad faith claim *in toto* under Section 8371. Thus, Rancosky maintained that the trial court erred in concluding that she failed to satisfy the first *Terletsky* prong

based upon her failure to demonstrate that Conseco denied her benefits due to its subjective motive of self-interest or ill-will.

In a published opinion, a three judge panel of the Superior Court vacated the trial court's judgment as to Rancosky's bad faith claim and remanded for further proceedings on that claim. *Rancosky v. Washington Nat'l Ins. Co.*, 130 A.3d 79 (Pa. Super. 2015). The Superior Court agreed with Rancosky that the first prong of the *Terletsky* test, whether the insurer lacked a reasonable basis for denying benefits, is an objective inquiry and that the subjective intent of the insurer has no relevance thereunder.[8] Thus, it held that the trial court erred as a matter of law in denying Rancosky's claim under the reasonable basis prong of the *Terletsky* test premised upon the court's holding that she failed to demonstrate self-interest or ill-will on the part of Conseco.

Consistent with its prior precedent, the Superior Court further held that, to the extent an insurer's motive of self-interest or ill-will is relevant in a bad faith claim, it is merely probative of the second *Terletsky* prong, rather than a prerequisite to succeeding altogether. *See*, *e.g.*, *Greene v. United Services Auto. Ass'n*, 936 A.2d 1178, 1191 (Pa. Super. 2007) (holding "that the motive of self-interest or ill will level of culpability is not a third element required for a finding of bad faith, but it is probative of the second element identified in *Terletsky*, *i.e.*, the insurer knew or recklessly disregarded its lack of reasonable basis in denying the claim") (citation and internal quotations omitted), *appeal denied*, 954 A.2d 577 (Pa. 2008). Thus, the Superior Court reiterated the *Terletsky* framework for analyzing bad faith claims under Section 8371

---

[8] As will be discussed in further detail *infra*, in its brief to this Court Conseco acknowledges that the first prong of the *Terletsky* test is an objective inquiry but maintains that proof of the insurer's subjectively improper motive is a prerequisite to prevailing in a bad faith action under Section 8371.

and held that proof of self-interest or ill-will, while potentially probative of the second prong, is not required under either prong of the *Terletsky* test.

Next, the Superior Court determined, based upon its independent review of the record, that the evidence did not support the trial court's determination that Conseco had a reasonable basis for denying Rancosky benefits under her cancer policy. The Superior Court believed it could make such a determination based upon the factual findings and credibility determinations made by the trial court in its Pa.R.A.P. 1925(a) opinion. The Superior Court concluded that if Conseco had conducted any meaningful investigation into the starting date of Rancosky's cancer disability during its review of Rancosky's reconsideration request, it would have discovered that she was unable to work due to her cancer diagnosis beginning on February 4, 2003, and that she made the required premium payments during the ninety-day waiting period of her cancer policy. Thus, the court opined, Conseco would have understood that her failure to pay premiums after her final payroll-deducted premium on June 24, 2003, was excused pursuant to the waiver-of-premium provision. Because Conseco failed to conduct any such investigation and merely accepted the incorrect information from Rancosky's physicians that her disability began on April 21, 2003, the Superior Court determined that Conseco lacked a reasonable basis for denying Rancosky benefits pursuant to the first prong of the *Terletsky* test.

As to the second prong of the *Terletsky* test, whether Conseco knew or recklessly disregarded its lack of a reasonable basis in denying benefits, the Superior Court remanded to the trial court to make a determination in the first instance. Accordingly, it vacated the trial court's judgment as to Rancosky's bad faith claim and remanded for further proceedings.

This Court subsequently granted Conseco's petition for allowance of appeal limited to the following question, as phrased by Conseco:

Whether this Court should ratify the requirements of *Terletsky v. Prudential Property & Casualty Insurance Co.*, 649 A.2d 680 (Pa. Super. 1994), *appeal denied*, 659 A.2d 560 (Pa. 1995), for establishing insurer bad faith under 42 Pa.C.S. § 8371, and assuming the answer to be in the affirmative, whether the Superior Court erred in holding that *Terketsky['s]* factor of a "motive of self-interest or ill-will" is merely a discretionary consideration rather than a mandatory prerequisite to proving bad faith?

*Rancosky v. Washington Nat'l Ins. Co.*, 144 A.3d 926 (Pa. 2016).[9]

## II. Analysis

In order to answer the question presented in this appeal, an issue of first impression for this Court, we must interpret Pennsylvania's bad faith insurance statute at 42 Pa.C.S. § 8371, which provides, in full, as follows:

§ 8371. Actions on insurance policies

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S. § 8371.

Issues of statutory interpretation present this Court with questions of law; accordingly, our standard of review is *de novo* and our scope of review is plenary. *See*

---

[9] The Superior Court further held that Rancosky's bad faith claim is not time-barred under the applicable statute of limitations. This Court did not ultimately grant further review of the statute of limitations issue raised by Conseco. Thus, it is finally decided in favor of Rancosky.

*Pennsylvania Pub. Util. Comm'n v. Andrew Seder/The Times Leader*, 139 A.3d 165, 172 (Pa. 2016). This Court's interpretation of Section 8371, and indeed of all statutes, is guided by the Statutory Construction Act, 1 Pa.C.S. §§ 1501-1991. Pursuant to the Statutory Construction Act, the object of all statutory construction is to ascertain and effectuate the General Assembly's intention. 1 Pa.C.S. § 1921(a). When the words of a statute are clear and free from ambiguity, the letter of the statute is not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b). However, when the words of a statute are not explicit, the General Assembly's intent may be ascertained by considering matters other than the statutory language, such as the occasion and necessity for the statute, the circumstances of the statute's enactment, the object the statute seeks to attain, and the consequences of a particular interpretation. 1 Pa.C.S. § 1921(c). Moreover, technical words and phrases that have acquired a peculiar and appropriate meaning shall be construed according to such peculiar and appropriate meaning. 1 Pa.C.S. § 1903(a).

Critically, when read in a vacuum, the plain language of Section 8371 provides little guidance in answering the discrete legal question raised herein, namely, the level of proof required to prevail in a bad faith claim. In enacting Section 8371, the General Assembly did not define "bad faith" or otherwise set forth the manner in which a party must prove liability. Therefore, in order to understand the meaning of "bad faith," and thus ascertain and effectuate the intent of the General Assembly in enacting Section 8371, we must utilize the additional tools of statutory construction outlined above. In particular, we look to the occasion and necessity for the statute and the circumstances of the statute's enactment. 1 Pa.C.S. § 1921(c).

In this regard, we observe that Section 8371 is widely considered a delayed legislative response to this Court's 1981 decision in *D'Ambrosio v. Pennsylvania Nat'l*

*Mut. Cas. Ins. Co.*, 431 A.2d 966 (Pa. 1981), in which we declined to recognize the common law right of action that had been adopted by a number of courts throughout the United States at that time related to an insurer's failure to act in good faith when refusing to cover a loss under an insured's policy. *See id.* at 968-70 (opining that it is the role of the General Assembly, rather than the courts, to create a cause of action for bad faith conduct); s*ee also Mishoe v. Erie Ins. Co.*, 824 A.2d 1153, 1160-61 (Pa. 2003) (observing that Section 8371 was a delayed legislative response to *D'Ambrosio*). Accordingly, consideration of the circumstances leading to the enactment of Section 8371 necessarily requires that we analyze the historical development of bad faith claims in the United States generally, and the *D'Ambrosio* Court's understanding of such claims in particular.

In 1973, the Supreme Court of California became the first court in the United States to recognize a right of action, sounding in tort, for bad faith denial of insurance policy benefits. *Gruenberg v. Aetna Ins. Co.*, 510 P.2d 1032 (Cal. 1973). Specifically, the California high court held that when an insurer "fails to deal fairly and in good faith with its insured by refusing, without proper cause, to compensate its insured for a loss covered by the policy, such conduct may give rise to a cause of action in tort for breach of implied covenant of good faith and fair dealing." *Id.* at 1037. Thereafter, a number of state courts throughout the country recognized the *Gruenberg* court's common law remedy for insureds claiming bad faith. *See, e.g.*, *Grand Sheet Metal Products Co. v. Protection Mut. Ins. Co.*, 375 A.2d 428 (Conn. Super. 1977); *Chavez v. Chenoweth*, 553 P.2d 703 (N.M. App. 1976); *Christian v. American Assurance Co.*, 577 P.2d 899 (Okla. 1977).

Of particular importance in the development of the law in this area, the Supreme Court of Wisconsin, after expressly adopting the *Gruenberg* right of action for bad faith,

expanded upon it by outlining the facts one must allege to support such a claim. *Anderson v. Continental Ins. Co.*, 271 N.W.2d 368, 376 (Wis. 1978). Specifically, the *Anderson* Court held that, in order to succeed in an action for bad faith, "a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Id.* The *Anderson* Court further held that while mere knowledge or recklessness is sufficient to demonstrate bad faith liability in general, additional proof of ill-will is required if the plaintiff specifically seeks punitive damages for the established bad faith conduct. *Id.* at 379 (stating "[w]e do not conclude, however, that the proof of a bad faith cause of action necessarily makes punitive damages appropriate" and that punitive damages requires "something in the nature of special-ill-will").

Gruenberg* and *Anderson* were both recognized as seminal cases in the development of bad faith claims in the United States by the time this Court was presented with the opportunity to acknowledge the judicially-created right of action in 1981. *See* Richard L. McMonigle, Jr., *Insurance Bad Faith in Pennsylvania* § 2:05 at 20-21 (8th ed. 2007) (stating that "[t]he decisions in *Gruenberg* and *Anderson* judicially created a tort of first party bad faith based upon the covenant of good faith and fair dealing implied in every insurance contract"). In *D'Ambrosio*, this Court was expressly urged by the plaintiff to adopt the right of action first recognized in *Gruenberg*. *Id.* at 968. We declined to do so, however, concluding that the General Assembly, rather than the courts, should create a cause of action for bad faith conduct in denying benefits under an insurance policy. *Id.* at 970. In describing the right of action it ultimately declined to recognize, the *D'Ambrosio* Court cited to both *Gruenberg* and *Anderson* and specifically quoted the above language from *Anderson*. *See D'Ambrosio*, 431 A.2d at 971 (stating that "those jurisdictions which have recognized a cause of action for bad

faith conduct have cautioned . . . that 'a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim'") (quoting *Anderson*, 271 N.W. 2d at 376). Though punitive damages were specifically sought by the plaintiff in *D'Ambrosio*, unlike the Wisconsin high court in *Anderson*, the *D'Ambrosio* Court made no distinction between bad faith liability generally and bad faith claims seeking punitive damages.

Responding to the *D'Ambrosio* Court's invitation to create a right of action for bad faith, the General Assembly enacted Section 8371 in 1990. *See Mishoe*, 824 A.2d at 1160-61 (observing that Section 8371 was a delayed legislative response to *D'Ambrosio*). Section 8371 provides that if a court finds "bad faith," it may take all of the following actions: award interest on the claim; award punitive damages against the insurer; assess court costs and attorney fees against the insurer. 42 Pa.C.S. § 8371 (*supra*, at pg. 10-11). Section 8371 does not define "bad faith," set forth the manner in which plaintiffs must prove bad faith, or distinguish the manner of proof for punitive damages from other bad faith damages. To the contrary, Pennsylvania's bad faith statute provides for the award of interest, attorney's fees, and punitive damages upon a showing of bad faith.

As noted, this Court has not had occasion to consider the precise contours of bad faith claims arising under Section 8371 since its enactment.[10] Consequently, the

---

[10] We observe, however, that this Court has considered other aspects of claims brought pursuant to Section 8371. *See Toy*, 928 A.2d at 200 (holding that the General Assembly did not intend to give relief to an insured who alleged that his insurer engaged in unfair or deceptive practices in soliciting the purchase of an insurance policy when it enacted Section 8371); *Birth Center v. St. Paul Companies, Inc.*, 787 A.2d 376 (Pa. 2001) (holding that in creating additional remedies for bad faith under Section 8371, the General Assembly did not intend to prohibit an award of compensatory contractual damages that were otherwise available at common law); *Mishoe*, 824 A.2d at 1160 (continued…)

Superior Court's 1994 decision in *Terletsky* has been the preeminent ruling on this issue. There, the Superior Court observed that in the insurance context, bad faith had acquired a particular meaning, citing the following definition from the 6th edition of *Black's Law Dictionary*:

> "Bad faith" on part of the insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), **through some motive of self-interest of or ill will**; mere negligence or bad judgment is not bad faith.

*Terletsky*, 649 A.2d at 688 (quoting *Black's Law Dictionary* 139 (6th ed. 1990) (emphasis added)); *see also* 1 Pa.C.S. § 1903(a) (providing that words shall be construed in accordance with the peculiar and appropriate meaning they have acquired). Citing to *D'Ambrosio*, the Superior Court articulated the test for bad faith as follows: "to recover under a claim of bad faith, the plaintiff must show [1] that the defendant did not have a reasonable basis for denying benefits under the policy and [2] that the defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim." *Id.* (citing, *inter alia*, *D'Ambrosio*, 431 A.2d at 971).

Though the *Terletsky* court did not reference self-interest or ill-will in its test, or application thereof, its citation to *Black's Law Dictionary* inadvertently created confusion

_____

(…continued)

(holding that the Pennsylvania Constitution does not provide for the right to a jury trial for bad faith claims arising under Section 8371). While these cases are instructive in terms of their overview of the development of bad faith insurance claims in Pennsylvania, none of them addressed the issue presented today, namely, the legal test for bad faith under Section 8371. *See, e.g., Toy*, 928 A.2d. at 200 n.16 (stating "we do not consider what actions amount to bad faith."). Consequently, our prior decisions interpreting Section 8371 do not directly control our disposition of the instant matter. Moreover, nothing we say here should be read as casting doubt on the validity of the holdings in those cases.

as to the relationship between the two-prong test and the seemingly additional requirement of proving a subjectively improper motive on the part of the insurance company. *See Greene*, 936 A.2d at 1189. However, when squarely presented with the issue in subsequent cases, the Superior Court has consistently clarified, as it did in the case *sub judice*, that the *Terletsky* test did not establish a self-interest or ill-will level of culpability for bad faith. *See Greene*, 936 A.2d at 1190 (stating that "the motive of self-interest or ill will level of culpability is not a third element required for a finding of bad faith, but it is probative of the second element identified in *Terletsky*, *i.e.*, the insurer knew or recklessly disregarded its lack of reasonable basis in denying the claim") (citation and internal quotations omitted); *Nordi v. Keystone Health Plan West Inc.*, 989 A.2d 376, 384-85 (Pa. Super. 2010) (stating that the *Terletsky* court's reference to *Black's Law Dictionary* did not create a self-interest or ill-will level of culpability for bad faith claims). Accordingly, while this issue has evaded appellate review from this Court, the longstanding standard in Pennsylvania has been the Superior Court's two-pronged test in *Terletsky* and its subsequent clarification that self-interest and ill-will, while probative, is not required.

With this historical backdrop in mind, we turn to the parties' arguments and their competing interpretations of Section 8371. Initially, we observe that the parties are in substantial agreement on several aspects of bad faith claims under Section 8371. Both parties generally agree with the *Terletsky* test and that the first prong, whether the insurer had a reasonable basis for denying benefits, is an objective inquiry into whether a reasonable insurer would have denied payment of the claim under the facts and circumstances presented. *See Anderson*, 271 N.W.2d at 377 (stating that the absence of a reasonable basis is an "objective standard, . . . *i.e.*, would a reasonable insurer

under the circumstances have denied or delayed payment of the claim under the facts and circumstances") (citation omitted).

Consequently, both parties agree that mere negligence is insufficient for a finding of bad faith under Section 8371 and the primary point of contention relates to the relevance, if any, of the insurance company's subjective motivation under the second *Terletsky* prong. In this regard, both parties contend that the General Assembly did not specifically define "bad faith" or set forth the manner in which an insured must demonstrate a bad faith claim because the phrase had acquired a peculiar and universally acknowledged meaning by the time Section 8371 was enacted in 1990. *See* 1 Pa.C.S. § 1903(a) (providing that words shall be construed in accordance with the peculiar and appropriate meaning they have acquired). While Conseco maintains that the acquired meaning of "bad faith" includes whether the insurer had a subjectively improper motive, Rancosky argues that self-interest and ill-will are merely probative and that knowledge or recklessness is sufficient.

In support of its position that an insurance company's subjectively improper motive is part of the well-established meaning of bad faith, Conseco relies, *inter alia*, upon the definition of "bad faith" from the 1990 edition of *Black's Law Dictionary*, which was cited by the *Terletsky* court and includes "motive of self-interest or ill will" as part of its definition. Conseco observes that this edition of *Black's Law* was published the same year Section 8371 was enacted and that it is therefore an appropriate barometer of bad faith as it was understood at that time. Conseco further highlights that the Wisconsin Supreme Court's decision in *Anderson*, which was cited by the *D'Ambrosio* Court, described bad faith as an intentional tort. *See Anderson*, 271 N.W.2d at 376 (stating "[i]t is apparent, then, that the tort of bad faith is an intentional one".). Additionally, Conseco maintains that the punitive damages provision of Section 8371 is

penal in nature, designed to punish and deter bad faith conduct. Therefore, Conseco argues that it must be construed narrowly in favor of defendants pursuant to the rule of lenity. *See* 1 Pa.C.S. § 1928(b)(1) (providing that penal statutes are to be strictly construed).[11]

In response, Rancosky observes that the version of *Black's Law Dictionary* cited by Conseco was not published until July of 1990, after Section 8371 was signed into law on February 7, 1990. Thus, she maintains that it could not have informed the General Assembly's understanding of bad faith. Rather, she highlights that in *D'Ambrosio*, this Court indicated that recklessness is sufficient in a bad faith cause of action. *See D'Ambrosio*, 431 A.2d at 971 (stating that "those jurisdictions which have recognized a cause of action for bad faith conduct have cautioned . . . that 'a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim.'") (citing *Anderson*, 271 N.W.2d at 376). Because Section 8371 is widely viewed as a legislative response to this Court's decision not to recognize a common law right of action for bad faith conduct in *D'Ambrosio*, she argues that the General Assembly intended to incorporate that Court's definition of bad faith into Section 8371. As to Conseco's argument that Section 8371 is a penal statute, Rancosky counters that, in enacting Section 8371, the General Assembly intended to create a private right of action in order to address the unequal bargaining power between insurance companies and policyholders. Accordingly, Rancosky argues that Section 8371 should be construed broadly in favor of plaintiffs to effectuate its remedial purpose. *See* 1 Pa.C.S. § 1928(c) (providing for liberal construction of statutes to effect their objects and promote justice).

---

[11] Conseco does not specifically reference the *Anderson* Court's holding that a higher manner of proof is required where the plaintiff seeks punitive damages.

Thus, while Rancosky acknowledges that mere negligence is insufficient, she argues that a recklessness standard effectuates the intent of the General Assembly in enacting Section 8371.

Given the historical development of bad faith claims and the context in which the General Assembly enacted Section 8371, we agree with the parties that in responding to the *D'Ambrosio* decision the General Assembly intended to incorporate that Court's understanding of bad faith. As stated *supra*, this Court's citation to *Grunberg* and *Anderson* in *D'Ambrosio*, and in particular to the test from *Anderson*, suggests that those cases were critical to this Court's understanding of the nature of such claims. While the Wisconsin high court in *Anderson* did indeed describe the tort of bad faith as "an intentional one," *Anderson*, 271 N.W.2d at 376, it reiterated throughout its opinion that knowledge or recklessness is sufficient for demonstrating liability in a bad faith cause of action. *See*, *e.g.*, *id.* (stating that "[t]o show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim"); *see also id.* at 377 (reiterating its two-prong test and stating "implicit in that test is our conclusion that the knowledge or the lack of a reasonable basis may be inferred and imputed to an insurance company where there is a reckless disregard of a lack of a reasonable basis for denial or a reckless indifference to facts or to proofs submitted by the insured"). Consequently, we conclude that the *Anderson* Court spoke with clarity as to the standard of proof for liability in a bad faith action.

Importantly, however, the *Anderson* Court went on to state that a higher standard of proof is necessary where the plaintiff specifically seeks punitive damages related to bad faith denial of insurance benefits. *Id.* at 379 (stating "[w]e do not conclude, however, that the proof of a bad faith cause of action necessarily makes punitive

damages appropriate"). Specifically, it held that for punitive damages to be awarded, "there must be a showing of an evil intent deserving of punishment or of something in the nature of special ill-will or wanton disregard of duty or gross or outrageous misconduct." *Id.* Thus, it appears that the inclusion of an ill-will level of culpability in bad faith claims has its genesis in the *Anderson* Court's distinction between bad faith liability in general and a bad faith claim specifically seeking punitive damages. Consequently, the gravamen of our inquiry is whether the *D'Ambrosio* Court, and thus the General Assembly, similarly understood that an award of punitive damages carried a higher evidentiary threshold in the bad faith context.

In this regard, we observe that punitive damages were specifically pled in the *D'Ambrosio* case. *D'Ambrosio*, 431 A.2d at 967. Notwithstanding its reliance upon *Anderson*, however, the *D'Ambrosio* Court made no reference to a higher threshold for punitive damages when describing the bad faith right of action, stating only that "a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's lack of a reasonable basis for denying the claim." *Id.* at 971. While we acknowledge that the *D'Ambrosio* Court ultimately did not to recognize the right of action at common law, we nonetheless find it important that the *D'Ambrosio* Court provided no indication of a higher threshold for punitive damages in its far reaching discussion of the development of bad faith claims.

Indeed, in responding to *D'Ambrosio*, the General Assembly seemingly put punitive damages on the same footing as other categories of damages when it enacted Section 8371. Specifically, the statute sets forth that, upon a finding of bad faith on the part of the insurer, a court may award interest, punitive damages, and/or court costs and counsel fees. 42 Pa.C.S. § 8371 (*supra*, at pg. 10-11). Consequently, as Section 8371 does not distinguish between the standard for finding "bad faith" generally

and "bad faith" allowing for punitive damages, we find no basis for concluding that the General Assembly intended to impose a higher standard of proof for bad faith claims seeking punitive damages when it created the right of action.

Moreover, looking to the consequences of the competing interpretations of Section 8371, *see* 1 Pa.C.S. § 1921(c)(6), we find that Conseco's proffered interpretation would create an unduly high threshold for bad faith claims. Given our conclusion that there is no basis to distinguish between punitive damages and other categories of damages under Section 8371, an ill-will level of culpability would limit recovery in any bad faith claim to the most egregious instances only where the plaintiff uncovers some sort of "smoking gun" evidence indicating personal animus towards the insured. We do not believe that the General Assembly intended to create a standard so stringent that it would be highly unlikely that any plaintiff could prevail thereunder when it created the remedy for bad faith. Such a construction could functionally write bad faith under Section 8371 out of the law altogether.

For the reasons set forth above, we conclude that the Superior Court's longstanding two-pronged test, first articulated in *Terletsky*, presents an appropriate framework for analyzing bad faith claims under Section 8371. In particular, we conclude that the *Terletsky* test, and its imposition of a recklessness standard for liability under the second prong, comports with the historical development of bad faith in Pennsylvania and effectuates the intent of the General Assembly in enacting Section 8371.[12] Accordingly, we hold that proof of an insurer's motive of self-interest or ill-will, while

---

[12] Given our conclusion that the General Assembly had a particular understanding of bad faith when it enacted Section 8371 and did not distinguish between punitive and other categories of damages, the phrase "bad faith" is sufficiently clear within the context of the statute. Accordingly, we need not address the parties' arguments as to whether Section 8371 is a penal or remedial statute.

potentially probative of the second prong, is not a mandatory prerequisite to bad faith recovery under Section 8371.

Because we agree with the legal test for bad faith claims under Section 8371 articulated by the Superior Court in this case and agree that the trial court misapplied that test by considering Conseco's subjective motivation in determining whether it had a reasonable basis for denying Rancosky's claim, we affirm the Superior Court's ultimate disposition to vacate the trial court's judgment and remand for further proceedings on Rancosky's bad faith claim. However, we respectfully believe that the Superior Court erred in making a specific determination as to whether the record in this case demonstrates Conseco's lack of a reasonable basis for denying Rancosky benefits, *i.e.*, the first *Terletsky* prong. The Superior Court premised its holding in this regard upon credibility determinations the trial court made in its Rule 1925(a) opinion. However, because it is unclear to what extent the trial court's findings on the reasonable basis prong of *Terletsky* were intertwined with its erroneous belief that proof of Conseco's motive of self-interest or ill-will was required, upon remand the trial court should consider both prongs of the *Terletsky* test anew.

### III. Conclusion

In summary, we hold that, to prevail in a bad faith insurance claim pursuant to Section 8371, a plaintiff must demonstrate, by clear and convincing evidence, (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis in denying the claim. We further hold that proof of the insurer's subjective motive of self-interest or ill-will, while perhaps probative of the second prong of the above test, is not a necessary prerequisite to succeeding in a bad faith claim. Rather, proof of the insurer's knowledge or reckless disregard for its lack of reasonable basis in denying the claim is sufficient for

demonstrating bad faith under the second prong. For these reasons, we affirm the judgment of the Superior Court, which vacated the trial court's judgment in part and remanded for further proceedings on Appellee's bad faith claim. On remand, the trial court should consider anew whether the above test has been met.

Justices Todd, Donohue, Dougherty, Wecht and Mundy join the opinion.

Chief Justice Saylor files a concurring opinion.

Justice Wecht files a concurring opinion.