J-A03011-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| BENJAMIN A. WILSON AND KATHLEEN WILSON | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 717 WDA 2018 |
| ERIE INSURANCE GROUP AND ERIE INSURANCE EXCHANGE | : | |

Appeal from the Order Entered April 27, 2018
In the Court of Common Pleas of Bedford County Civil Division at No(s):
612 of 2002

BEFORE:  BOWES, J., SHOGAN, J., and STRASSBURGER*, J.

MEMORANDUM BY BOWES, J.:                              FILED MAY 13, 2019

Benjamin A. Wilson and Kathleen Wilson ("the Wilsons") appeal from the April 27, 2018 order denying their motion for relief from judgment of non pros, which the trial court entered based on inactivity. After thorough review, we reverse the order, vacate the judgment of non pros, and remand.

The underlying facts relevant to our review consist of the following. At all times relevant hereto, the Wilsons insured their two motor vehicles with Erie Insurance Group and Erie Insurance Exchange ("Erie"). In addition to the coverages mandated under Pennsylvania law, they paid substantial premiums to purchase $250,000/$500,000 in stacked uninsured/underinsured ("UM/UIM") coverage calculated to protect their family and other passengers in their vehicles injured by an uninsured or underinsured driver.

_____
*   Retired Senior Judge assigned to the Superior Court.

On February 14, 1999, Kathleen Wilson was seriously injured in an automobile accident while driving one of the vehicles insured under the Erie policy. She suffered injuries to her left foot and a herniated cervical disc, both of which required surgery, and a closed head injury that left her with permanent cognitive defects.

The Wilsons settled with the other at-fault driver, and notified Erie that they intended to pursue UIM benefits under their policy. In 2000, Erie offered $50,000 to settle the UIM case. The insurer subsequently doubled its offer to $100,000, stating at that time that it would not increase the offer. In advance of a January 21, 2002 mediation requested by Erie, the Wilsons demanded $450,000 to settle the claim. Medical experts and therapists confirmed Mrs. Wilson's cognitive impairment, and that information was provided to Erie. The Wilsons also provided the economic report of James L. Kenkel, Ph.D., calculating a future economic loss of $845,000 based upon Mrs. Wilson's diminished earning capacity.[1]

After a UIM arbitration was scheduled for June 27, 2002, Erie offered $350,000 to settle the case on May 29, 2002. Thereafter, Erie increased its reserves twice, and the parties reached a $425,000 settlement on June 11, 2002, more than three years after the accident.

On June 26, 2002, the Wilsons filed an action against Erie sounding in bad faith, breach of contract, and violations of the Unfair Trade Practices and

_____

[1] According to the Wilsons' insurance expert, Erie did not re-evaluate the claim or adjust its reserves upon receipt of this information.

Consumer Protection Law. The Wilsons pled that Erie failed to timely investigate and evaluate their UIM claim, and pay benefits in accordance with its policy.

The record reveals that, after the close of the pleadings, the parties engaged in discovery throughout 2003 and 2004. Disputes arose over the production of Erie's fraud investigation and claims evaluation manuals. On April 2, 2004, the Wilsons filed a motion to compel discovery, which the trial court denied on September 15, 2004. Thereafter, no activity is reflected on the docket for two years. The Prothonotary of Bedford County issued a notice of termination for inactivity on October 2, 2006. The Wilsons filed a statement of intention to proceed, and the parties continued to conduct discovery. In June 2007, the Wilsons deposed Erie claims supervisor Thomas Wolf, and several other Erie employees were noticed for deposition. Based on Mr. Wolf's testimony, the Wilsons again moved to compel discovery, which the court denied in August 2007. Thereafter, the docket sat idle for more than three years, and the Prothonotary issued notice of its intention to terminate the case for inactivity on February 14, 2011. The Wilsons filed a statement of intention to proceed.

No further record activity is reflected until May 16, 2013, when the Wilsons served a deposition notice upon Erie's senior fraud investigator, George Spellman, and filed another motion to compel. The deposition did not occur. In March 2015, the Wilsons again noticed Mr. Spellman for deposition, but he was not produced by Erie. On August 10, 2016, the Wilsons noticed

- 3 -

Mr. Spellman's deposition yet again, as well as several additional depositions, but Mr. Spellman's deposition did not take place as scheduled.

On June 23, 2017, the Wilsons filed a motion to place the case on the civil trial list. Erie filed a motion for summary judgment on September 12, 2017, alleging first, that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law, and second, that the court should enter a judgment of non pros due to inactivity on the docket. In support of the non pros, Erie attached a copy of the docket. The Wilsons filed a response in opposition to summary judgment with supporting documentation.

While Erie's motion for summary judgment was pending, the court held a pretrial conference. In its October 11, 2017 pretrial order, the court ordered the completion of discovery by February 15, 2018; dispositive trial motions filed no later than March 1, 2018; jury selection to take place on March 2, 2018 and a jury trial from April 2, through April 6, 2018. It also scheduled argument on Erie's motion for summary judgment for November 22, 2017, but it is unclear from the record whether the argument took place.

On January 16, 2018, Erie filed a supplement to its motion for summary judgment or, in the alternative, a motion to compel discovery. Erie maintained that non pros should be granted citing the Wilsons' delay in providing responses to discovery as prejudicial. The Wilsons provided discovery responses five days later, which was one month prior to the close of discovery.

- 4 -

Erie took the depositions of Mr. and Mrs. Wilson on February 9 and 15, 2018, and produced its expert report on February 15, 2018. On February 28, 2018, the Wilsons filed Exhibit I to their reply in opposition to summary judgment, which consisted of the expert report of Stuart Setcavage. That same day, the court granted summary judgment in the nature of judgment of non pros[2] and dismissed the Wilsons' complaint with prejudice, citing Jacobs v. Halloran, 710 A.2d 1098 (Pa. 1998). The court found that the Wilsons lacked due diligence in prosecuting their action with reasonable promptitude, advanced no compelling reason for their inaction, and that their failure to respond to Erie's discovery requests for more than a decade resulted in a "substantial diminution" of Erie's ability to properly present its case at trial.

The Wilsons timely filed a petition seeking relief from judgment of non pros pursuant to Pa.R.C.P. 3051(c), and Erie filed an answer. Following argument on April 17, 2018, the court denied the petition on April 27, 2018. The Wilsons filed the instant appeal, and both the Wilsons and the trial court complied with Pa.R.A.P. 1925. The Wilsons raise three issues on appeal:

> A. Under the circumstances of this case, did the lower Court err and/or abuse its discretion in determining Erie Insurance suffered actual prejudice resulting in a substantial diminution of its ability to properly present its case at trial due to delay

---

[2] As the Explanatory Comment to Pa.R.C.P. 1035.2 points out, "the motion for summary judgment encompasses two concepts: (1) the absence of a dispute as to any material fact and (2) the absence of evidence sufficient to permit a jury to find a fact essential to the cause of action or defense." Although the trial court purported to grant summary judgment when it granted judgment of non pros, we do not believe this was a proper use of summary judgment.

when there was no evidence presented to the Court: (1) A material document was lost or destroyed; (2); A material witness was deceased or unavailable for trial; [or] (3) Any material and relevant information for the defense of the matter was lost or unavailable to [Erie].

B. Did the lower Court err and/or abuse its discretion in applying a presumption of prejudice standard rather than an actual prejudice standard?

C. Did the lower Court err and/or abuse its discretion in failing to find Erie Insurance was chargeable with delay?

Appellant's brief at 3.

In its counter-statement of the issues, Erie offers two alternate bases for affirming judgment of non pros. First, the insurer contends that the Wilsons failed to plead a meritorious cause of action in their petition for relief from judgment of non pros and, thus, all issues are waived. See Appellee's brief at 3. Additionally, Erie contends that the Wilsons' failure to plead facts controverting allegations of inactivity in opposition to judgment of non pros was fatal. Id.

The following legal principles inform our review. "By definition, a non pros is a judgment entered by the trial court which terminates a plaintiff's action due to the failure to properly and/or promptly prosecute a case."[3] Dombrowski v. Cherkassky, 691 A.2d 976, 977 (Pa.Super. 1997). In order to enter judgment of non pros and dismiss a case for inactivity, the trial court

_____

[3] Judgment of non pros may be entered for a variety of reasons such as failure to file a complaint (Pa.R.C.P. 1037), or as a discovery sanction (Pa.R.C.P. 4019).

must find all of the following: (1) a lack of due diligence on the part of the plaintiff in failing to proceed with reasonable promptitude; (2) the plaintiff must have no compelling reason for the delay; and (3) the delay must have caused actual prejudice to the defendant. This test was set forth in James Bros. Lumber v. Union Banking & Trust, 247 A.2d 587, 589 (Pa. 1968), and Jacobs, supra at 1103, and is commonly known as the James-Jacobs test.

A lack of due diligence is to be determined on a case-by-case basis. Jacobs, supra at 1102-03. There is no presumptive length of time required to establish inactivity. Id. Failure to provide a satisfactory explanation for a prolonged period of inactivity supports a finding of lack of diligence. James Bros., supra at 590. In making its determination, the trial court may examine non-docket activity to decide whether there exists a compelling reason for the delay. Id.; see also Streidl v. Community Gen. Hosp., 603 A.2d 1011, 1012 (Pa. 1992) (citing circumstances out of the party's control or ongoing depositions, discovery, changes in the law as reasons explaining lack of diligence for failing to proceed with reasonable promptitude).

Assuming that there has been a lack of due diligence and no reasonable explanation for the delay, judgment of non pros may only be entered when "the delay has caused some prejudice to the adverse party, such as the death of or unexplained absence of material witnesses." James Bros., supra at 589. Prejudice attaches based on "any substantial diminution of a party's

ability to properly present its case at trial." Jacobs, supra at 1103; see also Metz Contracting v. Riverwood Builders, 520 A.2d 891, 893-94 (Pa.Super. 1987). A defendant seeking judgment of non pros must plead and prove all three prongs of the test.

If non pros for inactivity is entered, the plaintiff's recourse lies in a petition to open the judgment pursuant to Pa.R.C.P. 3051(c). See Intech Metals, Inc. v. Meyer, 153 A.3d 406, 411 (Pa.Super. 2016). Rule 3051 provides in pertinent part:

> (c) If the relief sought includes the opening of the judgment of non pros for inactivity, the petition shall allege facts showing that
>
>> (1) the petition is timely filed,
>>
>> (2) there is a meritorious cause of action, and
>>
>> (3) the record of the proceedings granting the judgment of non pros does not support a finding that the following requirements for entry of a judgment of non pros for inactivity have been satisfied:
>>
>>> (i) there has been a lack of due diligence on the part of the plaintiff for failure to proceed with reasonable promptitude,
>>>
>>> (ii) the plaintiff has failed to show a compelling reason for the delay, and
>>>
>>> (iii) the delay has caused actual prejudice to the defendant.

Pa.R.C.P. 3051(c). Thus, in addition to challenging the court's application of the James-Jacobs test in granting the judgment of non pros, a petitioner must also timely file his petition and allege facts showing there is a meritorious cause of action. See Intech, supra (reaffirming that the "failure to file a

timely or rule-compliant petition to open operates as a waiver of any right to address issues concerning the underlying judgment of non pros").

The standard governing our review of a trial court's denial of a petition to open a judgment of non pros is one of abuse of discretion. See Jacobs, supra at 1101. A trial court will be found to have abused its discretion if, in reaching its conclusion, "the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, bias or ill will." Florig v. Estate of O'Hara, 912 A.2d 318, 323-24 (Pa.Super. 2006); see Intech, supra at 411 (stating this Court "must assure that the trial court did not abuse its discretion in balancing all of the surrounding facts and circumstances present at the time of the entry").

The trial court denied the Wilsons' relief from judgment of non pros after finding that they failed to convince the court that the record lacked support for all three of the James-Jacobs factors, namely: a lack of due diligence on the Wilsons' part, no compelling reason for the delay, and actual prejudice to Erie as a result of delay. Notably, the prejudice relied upon by the court in refusing to open the judgment of non pros was different than the prejudice it identified as the basis for granting the non pros in the first instance. Specifically, in granting the non pros, the court pointed to prejudice stemming from the Wilsons' failure to timely provide responses to Erie's discovery. Yet in refusing to open the judgment, the court relied upon American Bank and Trust Co. of Pennsylvania v. Ritter, 418 A.2d 408 (Pa.Super. 1980)

(holding decaying memories of witnesses and destruction of documents constituted prejudice), which it viewed as factually analogous to the instant case, and found prejudice in the fading memories exhibited by the Wilsons' inability to recall certain details during their 2018 depositions. The court concluded that the "extraordinary length of Plaintiffs' inexcusable delay inherently would — and did — have the decaying effect on the memories of witnesses and the preservation of testimony such that it amounted to prejudice against [Erie]'s ability to properly defend the case at trial." Trial Court Opinion, 8/15/18, at 4.

The Wilsons contend that the trial court erred and/or abused its discretion when it refused to open the judgment of non pros. They center their argument that the court erred in dismissing their bad faith case for inactivity on the fact that Erie failed to plead or prove actual prejudice, the third prong of the test. They argue that all three prongs of the James-Jacobs test had to be satisfied in order to warrant entry of non pros, and that Erie did not establish actual prejudice due to the delay in prosecuting the case. Although in granting the non pros, the trial court found prejudice in the Wilsons' delay in responding to Erie's discovery requests, the Wilsons maintain that the record contains no support for the trial court's conclusion that the delay in producing discovery responses, or any other delay, caused a "substantial diminution" of Erie's ability to present its case at trial. Order, 2/28/18.

- 10 -

The Wilsons claim first that Erie's motion for non pros contained no allegations of actual prejudice.[4] Absent were any averments that insurance documents were lost, that claims-handling personnel were deceased or unavailable, that UIM defense counsel's files were lost or destroyed, or that critical testimony was forgotten. Erie belatedly asserted in a supplement to its motion for summary judgment that the Wilsons' late production of discovery impaired its ability to prepare a defense only after the Wilsons pointed out Erie's failure to plead and prove actual prejudice. The Wilsons submit that since Erie did not file a motion to compel discovery for a decade, the discovery obviously was not critical to their defense. Moreover, the Wilsons supplied the outstanding discovery within a week of Erie filing a motion to compel, and prior to the discovery deadline.

The Wilsons contend that in denying their petition to open the non pros, the trial court presumed, without evidence, that a sixteen-year-delay would have necessarily eroded memories of relevant witnesses and impaired Erie's ability to defend the lawsuit. They direct our attention to James Bros., supra, and Jacobs, supra (abandoning presumption of prejudice standard recognized in Penn Piping, Inc. v. Ins. Co. of N. Am., 603 A.2d 1006 (Pa. 1992)), in support of their contention that there must be actual prejudice

---

[4] The Wilsons also maintain that Erie contributed to the delay by refusing to make its fraud investigator and claims adjustor available for deposition for several years.

shown due to delay; presumptive prejudice will not suffice. In Jacobs, our High Court noted that judgment of non pros for inactivity had its origins in the equitable principle of laches, and concluded that if delay did not result in any actual prejudice to the adversary, a cause of action should not be dismissed merely due to the passage of time.

Moreover, the Wilsons contend that the fading of their memories over time, the prejudice cited by the trial court in denying the petition to open the non pros, was of little moment in this bad faith case that focused on the conduct of the insurer. They direct us to Rancosky v. Washington Nat'l Ins. Co., 170 A.3d 364 (Pa. 2016), adopting the two-part test for bad faith as set forth by this Court in Terlesky v. Prudential Property & Casualty Ins. Co., 649 A.2d 680 (Pa.Super. 1994), in bad faith actions brought pursuant to 42 Pa.C.S. § 8371.[5] As this Court recently noted in Berg v. Nationwide Mut. Ins. Co., 189 A.3d 1030, 1037 (Pa.Super. 2018) (quoting Toy v. Metro. Life Ins. Co., 928 A.2d 186, 199 (Pa. 2007)), "bad faith applies to 'those actions an insurer took when called upon to perform its contractual obligations of defense and indemnification or payment of a loss that failed to satisfy the duty of good faith and fair dealing implied in the parties' insurance contract.'" In order to prove bad faith, a plaintiff must show

_____

[5] See Condio v. Erie Ins. Exch., 899 A.2d 1136, 1142 (Pa.Super. 2006) (discussing insurance company's duty to its insured of good faith and fair dealing in a UIM case).

by clear and convincing evidence that the insurer did not have a reasonable basis for denying benefits under the policy, and knew or recklessly disregarded its lack of reasonable basis in denying the claim. Rancosky, supra at 373. Thus, the Wilsons argue, a bad faith action turns on the reasonableness of the conduct of the insurer, not the insured.

Finally, according to the Wilsons, the lack of prejudice was evident from the fact that, despite the delay, Erie's insurance bad faith expert had the materials he needed to arrive at his opinion that Erie acted in good faith. The expert did not complain that there were items missing that negatively affected his ability to analyze Erie's handling of the claim and render his opinion. See Jacobs, supra at 1103 (holding prejudice attaches based on "any substantial diminution of a party's ability to properly present its case at trial"). As demonstrated by the reports of the parties' experts, the relevant evidence consisted largely of documents and logs in Erie's files and the files of its UIM lawyer, as well as deposition testimony of its claims handlers and investigators.

We observe the following. Although sixteen years have elapsed since the filing of this bad faith action, there have been periods of considerable activity followed by lulls. Erie did not move for non pros during the latter, but waited until the case was listed for trial and the parties were fully engaged in final trial preparations.

In its motion for non pros, Erie focused on the duration of the litigation and periods of inactivity on the docket, and failed to make the requisite assertion of actual prejudice. Absent was any averment that files were missing, witnesses had died without being subjected to cross-examination, or that its expert lacked information critical to the formulation of his opinions.

In their response in opposition to summary judgment/non pros filed November 15, 2017, the Wilsons pointed out that they had noticed depositions of Erie personnel in 2013, 2015, 2016, and 2017, and that Erie had not produced the deponents. It attributed some delay in the prosecution of this case to Erie's recalcitrance. Moreover, the Wilsons argued that Erie had failed to even allege actual prejudice due to the delay, let alone prove it.

In response, Erie filed a second supplement to its motion for summary judgment on January 16, 2018, in which it alleged for the first time that it had "sustained irreparable prejudice as a result of" the Wilsons' failure to answer discovery. See Supplement to Motion for Summary Judgment and in the Alternative Motion to Compel Discovery, 1/16/18, at 6 ¶20. Erie did not demonstrate how it was prejudiced, i.e., impaired in its ability to defend the case, because it lacked the discovery responses. Furthermore, the record confirms that the Wilsons supplied answers within a week of Erie's filing of a motion to compel, and well in advance of the discovery deadline.

We note that although the discovery had been outstanding for ten years, Erie never filed a motion to compel. Erie's inaction belies its subsequent claim

- 14 -

of "irreparable prejudice" due to the absence of timely discovery responses. Moreover, Erie did not substantiate how the discovery was important to its defense of the case. The record simply does not support the trial court's finding that Erie was substantially impaired in its ability to defend the case due to the Wilsons' failure to provide answers to discovery earlier.

In ruling on the Wilsons' petition to open the judgment of non pros, the trial court abandoned the unanswered discovery as the basis for a finding of prejudice. Instead, the court pointed to fading memories that it attributed to the lapse of time, a ground Erie had not asserted in its original or supplemental motions for non pros.

Even crediting that the Wilsons' ability to recall details of the UIM litigation may have eroded over the years since they filed their bad faith claim, we find no indication in the record that their memory lapses had any material effect on Erie's ability to defend the bad faith claim. Erie deposed Mrs. Wilson in the UIM case on February 20, 2001. In addition, Mrs. Wilson provided authorizations for medical and employment records. Throughout, the Wilsons provided updated information about her condition and ability to work. Admittedly, Mrs. Wilson could not remember if she had given a statement to Erie. However, we find her inability to recall immaterial as Erie has the statement. Similarly, although the Wilsons could not remember the timing of Erie's settlement offers, and the amount of those offers, it did not impair Erie's ability to defend the case. All of that information is documented in Erie's files

or, in some cases, admitted in the pleadings. The fact that the Wilsons could not remember if they had any expectations in terms of settlement was of no consequence as their expectations are irrelevant in this bad faith case. See Rhodes v. USAA Casualty Ins. Co., 21 A.3d 1253 (Pa.Super. 2011) (holding expectations of the insureds are not material to bad faith liability). It is difficult to imagine how Erie was substantially impaired in its ability to present a defense by the Wilsons' inability to recall these details. Moreover, if Erie genuinely required that information, it would not have waited until 2018 to take the depositions.

At issue in this bad faith case is what Erie did or did not do in the processing of the Wilsons' UIM claim. Most or all of that information is contained in its documents, files, and UIM counsel's file. Erie did not complain that files were missing, that witnesses had died, or that its expert lacked information critical to the formation of his opinions. In fact, both experts reviewed voluminous documentation, including the insurer's logs, claims file, UIM attorney's file, depositions, and Erie manuals, in rendering their expert opinions. On the record before us, despite the fact that this case has languished for more than sixteen years, we simply find no support for the trial court's conclusion that Erie suffered actual prejudice stemming from the Wilsons' delay in bringing this case to trial.

Erie reminds us that we can affirm the order denying relief from the entry of judgment of non pros on any ground supported by the record, and

that we are not limited to the trial court's rationale. See Appellee's brief at 18 n.1 (citing e.g., Commonwealth v. Katona, 191 A.3d 8, 16 (Pa.Super. 2018) (en banc). The insurer asserts there are two other grounds on which we may affirm the trial court's grant of non pros. In order to successfully open the judgment of non pros, the Wilsons had to satisfy all three prongs of Rule 3051(c), including the second prong requiring them to plead facts supportive of a meritorious cause of action. Erie relies upon Intech, supra, to sustain its position that the Wilsons' failure to plead such facts in their petition for relief from judgment of non pros was fatal to the opening of the judgment. Erie called the Wilsons' assertion of a meritorious claim "threadbare," "devoid of analysis," and supported only by reference to the record. Appellee's brief at 17-18.

We see no merit in Erie's argument. The Wilsons pled in paragraph 29 of their petition for relief that they had a meritorious cause of action and that the facts in support thereof were contained in Erie's first party benefits claim log notes; UIM claim log notes; the deposition transcripts of insurance claims personnel Sue Hudson and Thomas Wolf; Erie's claim handling policies; and the expert report of Stuart Setcavage (appended to Plaintiff's Reply and Brief in response to Erie's motion for summary judgment as Exhibit I).

We find that the Wilsons satisfied the meritorious pleading requirement of Rule 3051(c). They pled that that their bad faith claim was meritorious, and directed the court's attention to the documents, depositions, and an

expert report that were part of the record.[6] The expert's report contains his opinion that Erie acted in bad faith, which was based upon his review and analysis of thousands of pages of Erie documents, files, company policies, and depositions. As our Supreme Court held in Simmons v. Luallen, 763 A.2d 810, 813 (Pa. 2000), the requirement of a meritorious cause of action "is satisfied if the claim as pleaded and proved at trial would entitle [plaintiff] to relief." Since the trial court did not grant summary judgment based on the alleged absence of genuine issues of material fact and a finding that the insurer was entitled judgment as a matter of law, this cause of action met the definition of a meritorious claim. The record does not support affirmance on this ground.

Erie's second alternative basis for affirmance is similarly unavailing. Erie cites no authority in support of its contention that the Wilsons were required to plead facts controverting allegations of inactivity in opposition to judgment of non pros, and that the failure to do so was fatal. The Wilsons were charged with rebutting the trial court's conclusion that Erie satisfied all three prongs of the James-Jacobs test. By timely filing their petition, pleading a

_____

[6] Most of these documents were filed by the Wilsons in their response in opposition summary judgment. The expert report concluding that Erie acted in bad faith was filed shortly thereafter.

meritorious claim, and successfully challenging Erie's proof of actual prejudice, the Wilsons established their entitlement to relief.[7]

Order reversed, judgment of non pros vacated, and case remanded for further proceedings.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  5/13/2019

_____

[7] At issue herein is the application of Pa.R.C.P. 3051(c), set forth supra.  The Explanatory Comment to that rule explains that subsection (c) eliminated any requirement that the petitioner prove there was a reasonable explanation or excuse for the delay as a prerequisite to opening the judgment of non pros. See 2013 Explanatory Comment to Pa.R.C.P. 3051(c).  We note, however, that a plaintiff-petitioner may successfully open a judgment of non pros by establishing that the record does not support a finding that plaintiff failed to show a compelling reason for the delay, the second prong of the James-Jacobs test.