2016 PA Super 299

| | | |
|---|---|---|
| INTECH METALS, INC., VALFORM, INC., AND DAVID J. HANLIN | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : | |
| v. | : | |
| | : | No. 374 WDA 2016 |
| MEYER, WAGNER & JACOBS, A PROFESSIONAL CORPORATION AND THOMAS WAGNER, ESQUIRE, AN INDIVIDUAL | : | |

Appeal from the Order Entered February 8, 2016
In the Court of Common Pleas of Elk County
Civil Division at No(s): 1996-04

BEFORE: BENDER, P.J.E., RANSOM, J., and MUSMANNO, J.

OPINION BY RANSOM, J.:                    **FILED DECEMBER 22, 2016**

Intech Metals, Inc. ("Intech Metals"), Valform, Inc. ("Valform"), and David J. Hanlin ("Hanlin") (collectively, Appellants) appeal from the order entered February 8, 2016, denying their petition to open a judgment of *non pros*. We affirm.

The relevant facts and procedural history are as follows. Hanlin retained Thomas Wagner, Esquire ("Attorney Wagner") and the law firm of Meyer, Wagner & Jacobs, P.C. (collectively, Appellees) to draft documents regarding the formation of Intech Metals with Richard Phillips in December 1984. *See* Pl. Amended Compl., 8/19/1998, at ¶ 7-8; Notes of Testimony

("N.T."), 3/9/2005, at 67.[1]  Hanlin and Phillips both signed Intech Metals' articles of incorporation on December 31, 1984.  ***See*** N.T., 3/9/2005, at 106.  At that time, they had an oral agreement that Hanlin would supply capital, while Phillips would operate the business on a daily basis and supply technical knowledge, including patents that he held.  ***See*** Pl. Amended Compl. at ¶¶ 9-10.

Attorney Wagner acted as counsel for Intech Metals and represented Hanlin in personal matters.  ***See id.*** at ¶ 25.  Shortly after the formation of Intech Metals, Attorney Wagner assisted Hanlin in forming Valform, Inc. to "compliment" Intech Metals' business, and Hanlin was made principal shareholder.  ***See id.*** at ¶¶ 14-16, 59-60.  Intech Metals helped Valform to finance the purchase of a plant with the expectation of reimbursement.  ***See id.***  Hanlin instructed Attorney Wagner to draft a shareholder agreement, issuing Phillips fifty percent of the shares of Intech Metals stock "to remain non-vested; until such time as [Phillips] fulfilled the terms of the agreement."  ***Id.*** at ¶¶ 10-11.  Attorney Wagner also "presented an employment agreement and/or pre-incorporation agreement to Phillips, which Phillips failed to sign and return to the corporation."  ***Id.*** at ¶ 12.  Hanlin alleged that he invested additional capital into Intech Metals in

---

[1] According to Hanlin's testimony, Richard Phillips came to him with a four- or five-page business plan, contacts, and technology, which Phillips offered in exchange for ownership in the company.  ***See*** N.T., 3/9/2005, at 69-73, 75-76, and 77.

reliance upon Attorney Wagner's opinion letter that named Hanlin as sole shareholder. *See id.* at ¶¶ 25- 26. Attorney Wagner failed to issue stock that reflected Hanlin's subsequent investments as a loan to Intech Metals. *Id.* at ¶¶ 27-31.

When Phillips failed to deliver on several promises he made to Hanlin, Phillips was removed from Intech Metals' board of directors. *See* Pl. Amended Compl., 8/19/1998, at ¶¶ 19-22. Thereafter, Phillips demanded fifty percent of Intech Metals' stock. Appellees represented all Appellants in the resultant litigation ("Phillips Litigation"). *See* Appellees' Mot. for *Non Pros*, 7/12/2012, at 3. The issues in the Phillips Litigation were (1) whether Phillips signed the shareholder agreement drafted by Wagner, which reflected the oral agreement between Hanlin and Phillips, and (2) whether Phillips was entitled to fifty percent of the stock of Intech Metals. *See* Pl. Amended Compl., 8/19/1998, at ¶ 49. Counsel for Phillips called for Attorney Wagner's withdrawal from his representation of Hanlin and Intech Metals. *See id.* at ¶ 44. Attorney Wagner did not consider his joint representation of Hanlin and Intech Metals to pose a conflict of interest despite his duty of loyalty to the corporation. *See id.* at ¶¶ 44-47. The litigation resulted in a settlement. *See id.* at 53-54. Phillips received $300,000, a furnace, and cleaning equipment. *See id.* As a result of the litigation, Valform lost investments from Intech Metals, could not obtain financing to cover its business ventures, defaulted on its loans, and lost

collateral assets. *See id.* at ¶¶ 14-16, 59-60.

In January 1996, Appellants commenced this litigation by writ of summons. *See* Trial Ct. Op., 12/18/2015. In January 1998, Appellants filed a complaint and, following preliminary objections, filed an amended complaint in August 1998. The underlying claims against Appellees sound in professional negligence arising out of the Phillips Litigation, including: (1) failure to file a successful motion to dismiss Valform from the Phillips Litigation, (2) representation of Appellants while being their creditor for legal fees, (3) failure to document Hanlin's investments by issuing stock, (4) failure to represent them in the Phillips Litigation competently, and (5) breach of fiduciary duties to all Appellants. Pl. Amended Compl. at ¶¶ 62-66.

The pleadings were closed in February 1999. Thereafter, the case remained inactive until July 12, 2012, when Appellees filed a motion for judgment of *non pros*. Argument on the motion was scheduled but was continued to allow the parties ten days to resolve the matter via mediation. *See* Trial Ct. Order, 10/17/2012. Finally, in November 2014, Appellees notified the court that mediation was unsuccessful, and the court rescheduled oral argument on Appellees' motion for a judgment of *non pros*. *See* Trial Ct. Order, 11/6/2014.

Initially, the trial court denied Appellees' motion. *See* Trial Ct. Mem., 1/28/2015, at 18. Upon Appellees' request for reconsideration and following

additional briefing, the court granted the motion, and a judgment of *non pros* was entered. **See** Trial Ct. Revised Mem., 12/18/2015.

On January 19, 2016, the Elk County Prothonotary informed Appellants of the entry of judgment. **See** Notice of Judgment of *Non Pros*, 1/19/2016. On January 29, 2016, Appellants timely filed a petition to open the judgment of *non pros*. **See** Trial Ct. Order, 2/8/2016, at 2. Appellants timely filed a notice of appeal and court-ordered 1925(b) statement. The trial court filed a responsive opinion. **See** Trial Ct. 1925(a) Op., 5/4/2016.[2]

Appellants raise the following issues with regard to the trial court's entry of a judgment of *non pros*:

I. WHETHER the trial court erred in granting [Appellees'] motion for *non pros* where the [Appellees] have failed to establish that the Plaintiffs have shown a want of due diligence by failing to proceed with reasonable promptitude and where there has been no period of inactivity in the case?

II. WHETHER the [Appellees] are entitled to the entry of a judgment of *non pros* where, assuming there has been a delay in the proceedings, there is a compelling reason for the delay?

III. WHETHER the [Appellees] are entitled to the entry of a judgment of *non pros* where, assuming there has been a delay in the proceedings, the [Appellees] have not been caused to suffer actual prejudice by the delay?

Appellants' Br. at 6.

---

[2] With regard to Appellants' first two issues, the trial court directs us to its January 27, 2015 *Memorandum Decision and Order.* With regard to Appellants' third issue, the trial court directs us to its December 18, 2015 *Revised Memorandum Decision and Order.*

In this case, the trial court denied Appellants' petition to open for failing to allege facts in support of a meritorious cause of action. *See* Trial Ct. Order, 2/8/2016, at 2 (citing in support *Stephens v. Messick*; 799 A.2d 793 (Pa. Super. 2002)); Pa.R.C.P. 3051(c)(2). However, Appellants do not challenge the denial of their petition to open. *See, generally*, Appellants' Brief. Rather, Appellants contend that the trial court abused its discretion by entering a judgment of *non pros* in the first place. Thus, Appellants purport to challenge the propriety of the earlier, interlocutory order. For the following reasons, we deem this contention waived.

The entry of a judgment of *non pros* and a subsequent request for relief from such judgment are governed by different tests. *See Stephens*, 799 A.2d at 797.

> To dismiss a case for inactivity pursuant to a defendant's motion for *non pros* there must first be a lack of due diligence on the part of the plaintiff in failing to proceed with reasonable promptitude. Second, the plaintiff must have no compelling reason for the delay. Finally, the delay must cause actual prejudice to the defendant. As always, this determination is to be made by the trial court, whose decision will not be disturbed absent an abuse of discretion.

*Jacobs v. Halloran*, 710 A.2d 1098, 1103 (Pa. 1998); *see James Bros. Lumber v. Union Banking & Trust*, 247 A.2d 587, 589 (Pa. 1968) ("*James-Jacobs*" test).

In contrast, a petition to open a judgment of *non pros* is governed by a different standard. Pennsylvania Rule of Civil Procedure 3051(c) provides as follows:

J-A26027-16

### Rule 3051(c) Relief from Judgment of *Non Pros*

(c) If the relief sought includes the opening of the judgment of *non pros* for inactivity, the petition shall allege facts showing that
    (1) the petition is timely filed,
    (2) there is a meritorious cause of action, and
    (3) the record of the proceedings granting the judgment of *non pros* does not support a finding that the following requirements for entry of a judgment of *non pros* for inactivity have been satisfied:
        (i) there has been a lack of due diligence on the part of the plaintiff for failure to proceed with reasonable promptitude,
        (ii) the plaintiff has failed to show a compelling reason for the delay, and
        (iii) the delay has caused actual prejudice to the defendant.

Pa.R.C.P. No. 3051(c);[3] **Stephens**, 799 A.2d at 798. Thus, in addition to challenging the court's application of the **James-Jacobs** test, a petitioner must also timely file his petition and assert a meritorious cause of action.

Both standards are subject to the same abuse of discretion standard of appellate review. **Jacobs**, 710 A.2d at 1101; **Florig v. Estate of O'Hara**, 912 A.2d 318, 323 (Pa. Super. 2006). This Court "must assure that the trial court did not abuse its discretion in balancing all of the

_____

[3]The addition of subsection (c), Rule 3051 clarified the burden placed upon a petitioner seeking to open a judgment of *non pros* granted for inactivity. It "is intended to alter the ruling in **Madrid** [**v. Alpine Mountain Corp.**, 24 A.3d 380 (Pa. Super. 2011)] by providing for the opening of a judgment of *non pros*… upon a showing that the defendant did not meet each of the three requirements for the entry of a judgment of *non pros*." Pa.R.C.P. 3051, Cmt. (2013). Previously, such petitions were subject to Rule 3051(b), which did not require a petition to address the prejudice prong of the **James-Jacobs** test.

- 7 -

surrounding facts and circumstances present at the time of the entry." ***Valley Peat & Humus v. Sunnylands, Inc.***, 581 A.2d 193, 196 (Pa. Super. 1990).

However, "[a]ny appeal related to a judgment of *non pros* lies not from the judgment itself, but from the denial of a petition to open or strike." ***Madrid v. Alpine Motor Corp.***, 24 A.3d 380, 382 (Pa. Super. 2011). A party seeking to open a judgment of *non pros* must show that its petition to open satisfied the material elements of Pennsylvania Rule of Civil Procedure 3051(c). ***Florig***, 912 A.2d at 326. The test requires the movant to establish all three prongs. ***Id.*** (reaffirming ***Stephens***, 799 A.2d at 800). "[O]ne of the required elements of a Pa.R.C.P. 3051 petition is that facts must be shown to exist which support a meritorious cause of action." ***Stephens***, 799 A.2d at 800. Thus, the "failure to file a timely or rule-compliant petition to open operates as a waiver of any right to address issues concerning the underlying judgment of *non pros*." ***Madrid***, 24 A.3d at 382.

For example, in ***Stephens***, a petitioner filed a petition to open a judgment of *non pros* four years after this Court had quashed her improper direct appeal from the interlocutory order granting the judgment. ***Stephens***, 799 A.2d at 796. The trial court denied the petition, and this Court affirmed on the ground that the petition was untimely. ***Id.*** at 799-800. Moreover, in support of her appeal, the petitioner sought to challenge

the underlying judgment rather than the trial court's denial of her petition to open. This court specifically rejected the plaintiff's efforts, concluding that:

> [N]othing … relieved [petitioner] of her obligation to timely file a proper petition to strike or open the judgment of *non pros* … notwithstanding that she intended to argue on appeal that the judgment should not have been entered in the first place.

*Id.* at 799. Thus, this Court concluded that the petitioner had waived all issues concerning the entry of judgment. *Id.* at 801 (citing Pa.R.C.P. 3051).

In this case, the critical issue is whether failure to allege facts showing a meritorious cause of action in a petition to open operates as a waiver of issues concerning the underlying judgment of *non pros*. To show that a cause of action is meritorious, under Rule 3051(c)(2), "facts must be shown to exist which support a cause of action." *Madrid*, 24 A.3d at 383 (quoting *Jung v. St. Paul's Parish*, 560 A.2d 1356, 1358 (Pa. 1989) (citations omitted)). A petition that "merely repeats the averments from [the] complaint" does not satisfy the meritorious cause of action requirement in Rule 3051(c)(2). *Stephens*, 799 A.2d at 800.

As noted, the trial court determined that Appellants failed to plead any facts in support of a meritorious cause of action in their petition to open. *See* Trial Ct. Order, 2/8/2016, at 2. Further, Appellants fail to address this deficiency in their arguments to this Court. Extending the reasoning from *Madrid*, *Florig*, and *Stephens*, Appellants' failure to "show facts to exist that would support a meritorious cause of action" in their petition to open,

- 9 -

operates as a waiver of the issues concerning the underlying interlocutory order. *See Stephens*, 799 A.2d at 798; Pa.C.R.P. 3051(c)(2). On this basis, we affirm the court's order denying Appellant's petition to open.

Notwithstanding Appellants' failure to make an argument regarding an integral element of their claim, the trial court's decision to enter a judgment of *non pros* in this case was clearly correct. Appellants contend that the record does not support the court's grant of the underlying judgment. They begin by addressing the first two requirements of the *James-Jacobs* test in tandem. First, Appellants claim that the trial court abused its discretion in finding they failed to proceed with diligence. *See* Appellants' Brief at 13. They argue "the mere passage of time is not a dispositive factor upon which the Court may enter a judgment of *non pros*." *Id.* at 14-15 (citing *Manson v. First Nat'l Bank*, 77 A.2d 399, 401 (Pa. 1951)). Second, Appellants claim "significant non-docketed activities" and Hanlin's death in 2011 are compelling reasons for any delay caused by their lack of diligence. Appellants' Brief at 15 (citing in support *Marino v. Hackman*, 710 A.2d 1108, 1111 (Pa. 1998)).

Our Supreme Court has established that lack of due diligence should be determined on a case-by-case basis; there is no presumptive amount of time required to establish inactivity. *See Jacobs*, 710 A.2d at 1102-03 (holding that two-year presumption proved to be unworkable). Failure to

provide a satisfactory explanation for a prolonged period of inactivity supports a finding of lack of diligence. *James Bros.*, 247 A.2d at 590.

The trial court may examine non-docket activity to decide whether there exists a compelling reason for the delay. *Marino*, 710 A.2d at 1111. For example, reasons for a delay, such as circumstances out of the party's control or ongoing depositions, discovery, changes in the law, etc., may explain any lack of diligence in failing to proceed with reasonable promptitude. *See id.* (citing *Streidl v. Community Gen. Hosp.*, 603 A.2d 1011, 1012 (Pa. 1992)). In *Marino*, the Supreme Court recognized "an unusual amount of activity [had] not entered on the docket … [including] the taking of depositions of all parties." *Id.* at 1111. Reversing the lower court, the Supreme Court determined the case did not fall into "the category of stale cases that the rules of judicial administration are designed to eliminate from the system." *Id.*

Here, Appellants concede that the docket was inactive from 2006 through 2012. *See* Appellants' Brief at 14. However, they claim that any apparent inactivity is explained by non-docket activity, including: a 2006 deposition, a 2008 letter to defense counsel, two 2010 letters to expert, one expert report sent to client, June 2011 death of Appellant, January 2012 telephone call to inform defendant's counsel of Appellant's death, and June 2012 settlement demand conveyed by Appellants to Appellees. *Id.* at 14, 16-17.

Appellants' efforts do not compare to the significant non-docket activity presented by plaintiffs in **Marino**, which revealed a case on a trajectory toward a final disposition. **See Marino**, 710 A.2d at 1111. Here, the non-docket activity does not justify the overwhelming lack of activity between 2006 and 2012. As the trial court noted, the "vast majority of these activities were inconsequential to the progress of the case" and were "not events beyond [Appellants'] control." Trial Ct. Mem., 1/28/2015, at 10. We discern no abuse of discretion in this regard.

Moreover, Hanlin's death is not a compelling reason for multiple, prolonged periods of delay in a case based on operative facts that date back over twenty years. **See** Appellees' Brief at 14-15. Hanlin's death occurred 11-12 years after the close of pleadings. Appellants did not notify Appellees that Hanlin had died until six months after his death. Appellees waited another six months before filing their first motion for *non pros*. In the interim, Appellants did not attempt to move the case forward. We hold that any delay caused by Hanlin's death in 2011 does not excuse the preceding decade of inactivity. Accordingly, Appellants' argument is without merit.

Appellants also argue that the lower court failed to link delay in the prosecution of their claims to actual prejudice suffered by Appellees. **See** Appellants' Brief at 8. In this regard, Appellants focus on the probative value of Hanlin's deposition, completed prior to his death, and the testimony of several witnesses, also now deceased, which were preserved during the

Phillips Litigation. *Id.* at 19. According to Appellants, Appellees had an adequate opportunity to fully depose and cross-examine these witnesses. *Id.* at 20. Appellants maintain that the combination of such depositions and trial testimony is sufficient and relevant to go to trial on their claims in this case. *Id.*. Thus, Appellants claim that these several witnesses' deaths did not impose actual prejudice on Appellees.[4] *Id.* We disagree.

A judgment of *non pros* may be entered when "the delay has caused some prejudice to the adverse party, such as the death of or unexplained absence of material witnesses." *Stephens*, 799 A.2d at 797; *James Bros.*, 247 A.2d at 589. Prejudice attaches based on "any substantial diminution of a party's ability to properly present its case at trial." *Jacobs*, 710 A.2d at 1103; *see also Metz Contracting v. Riverwood Builders*, 520 A.2d 891, 893-94 (Pa. Super. 1987).

Upon reconsideration of Appellees' motion for *non pros*, the trial court ordered the parties to submit briefs on whether the deaths of material witnesses would impose actual prejudice on Appellees' ability to litigate. *See* Trial Ct. Rev. Mem., 12/18/2015, at 2. The trial court examined 350

---

[4] In support of this argument, Appellants rely on the following: (1) a decision of the court of common pleas, and (2) they quote *Vanderhoff v. Harleysville Insurance Company*, 78 A.3d 1060, 1065 (Pa. 2013) (holding that prejudice to the insurer in an uninsured motorist claim requires a balancing test). Their arguments are unpersuasive because the former is a decision by a lower court that is not authoritative or precedential in this Honorable Court and the latter is entirely irrelevant to the "actual prejudice" prong in support of a judgment of *non pros*.

pages of testimony submitted by Appellants. *See id.* at 3. The lower court concluded that this prior testimony was irrelevant and therefore would be inadmissible in the current litigation. *See id.* at 4. The record supports the court's conclusion.

Appellants' failure to take a proactive role in moving the case forward divested Appellees of an opportunity to depose and cross-examine several, essential witnesses, prior to their deaths, on the specific allegations made in the amended complaint in this case. *See Jacobs*, 710 A.2d at 1103; *James Bros.*, 247 A.2d at 589. Therefore, Appellees incurred actual prejudice caused by Appellants' delay pursuant to Pa.C.R.P. 3051(c)(iii). Accordingly, the trial court appropriately entered a judgment of *non pros.*

In conclusion, Appellants fail to plead facts in support of a meritorious cause of action. This failure is dispositive. *See Florig*, 912 A.2d at 326; *Madrid*, 24 A.3d at 382; *Stephens*, 799 A.2d at 798; Pa.C.R.P. 3051(c)(2). Accordingly, the trial court did not err in denying Appellants' petition to open.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/22/2016

- 14 -