J-A30035-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DONALD BENTLEJEWSKI AND KATHLEEN BENTLEJEWSKI, HUSBAND AND WIFE | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : : | |
| v. | : : : | |
| | : | No. 597 WDA 2018 |
| | : | |
| WOODBRIDGE, A CONDOMINIUM, A PENNSYLVANIA CONDOMINIUM ASSOCIATION; COMMUNITY MANAGEMENT SOLUTIONS, INC., A PENNSYLVANIA CORPORATION; MOE TOOMEY CONSTRUCTION, LLC, A PENNSYLVANIA LIMITED LIABILITY COMPANY; MAURICE J. TOOMEY, AN INDIVIDUAL; AND BELFOR USA GROUP, INC., A MICHIGAN CORPORATION, D/B/A BELFOR PROPERTY RESTORATION | : : : : : : : : : : : : : : : | |

Appeal from the Order Entered April 9, 2018
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): GD-12-002914

BEFORE: SHOGAN, J., KUNSELMAN, J., and STRASSBURGER*, J.

MEMORANDUM BY SHOGAN, J.: **FILED FEBRUARY 6, 2019**

Donald and Kathleen Bentlejewski ("Appellants") appeal from the order entered on April 9, 2018, denying their petition to open, vacate, or strike a judgment of *non pros*.[1] We affirm.

---

[1] "Any appeal related to a judgment of *non pros* lies not from the judgment itself, but from the denial of a petition to open or strike." **Madrid v. Alpine Mountain Corp.**, 24 A.3d 380, 382 (Pa. Super. 2011) (citing Pa.R.C.P. 3051).

---

* Retired Senior Judge assigned to the Superior Court.

In March of 2006, Appellants purchased a townhouse north of Pittsburgh, Pennsylvania ("the Property"). The Property is part of a complex managed by Woodbridge, A Condominium ("Woodbridge"), a Pennsylvania condominium association. Woodbridge maintains a contract with Community Management Solutions, Inc. ("CMS") to perform the day-to-day tasks of managing Woodbridge. Complaint, 3/28/12, at ¶¶ 2, 7–9.

On February 5 and 6, 2010, the Pittsburgh area received record amounts of snowfall. Complaint, 3/28/12, at 10. According to Appellants, this snowfall caused "significant ice accumulation, ice damming, and later, water infiltration on the exterior walls, roof surfaces and foundations of" the Property. *Id.* Appellants claim they began notifying representatives of Woodbridge and CMS of this damage on February 14, 2010. *Id.* at 11. Appellants received a telephone call from a CMS representative on February 24, 2010, by which date "significant water infiltration into the Property had already occurred." *Id*. at ¶ 12.

Woodbridge and CMS entered into a contract with Belfor USA Group, Inc. d/b/a Belfor Property Restoration ("Belfor") to inspect the townhouse and begin repair work. Complaint, 3/28/12, at ¶ 13. That inspection occurred on March 3, 2010, by which date "significant mold growth had begun to occur on the interior surfaces and wooden structural supports within the interior walls of the" townhouse. *Id.* at ¶ 14. According to Belfor, the damage did not warrant significant replacement work, and Belfor provided Appellants with a

dehumidifier to run constantly. *Id.* at ¶¶ 16. Appellants claim they "became ill with respiratory difficulties and severe headaches due … to the circulation of mold spores throughout the Property as a side effect of the dehumidifier." *Id*. at ¶ 17. Throughout the next several months, Appellants, Belfor, CMS, and Woodbridge disputed the amount of damage done to the property and who was responsible for repairing that damage. *Id.* at ¶¶ 21–24.

Appellants learned on May 27, 2010, that CMS and Woodbridge had contracted with Moe Toomey Construction, LLC and Maurice J. Toomey (collectively "Toomey") to make repairs at Woodbridge. Complaint, 3/28/12, at ¶ 25. After inspecting the property in June 2010, Toomey began repair work on Appellants' property on July 12, 2010, which included the "removal of exterior siding." *Id*. at ¶¶ 26–27. On July 15, 2010, Toomey, along with representatives of Woodbridge, CMS, and their insurance company performed another inspection, and Appellants requested Toomey "provide [Appellants] with a plan for making the necessary repairs." *Id*. at ¶ 28. No further action was taken on the property until August 30, 2010, when Toomey began excavation work and completed the removal of exterior siding. *Id.* at ¶ 29.

In September of 2010, Appellants permitted Toomey to begin interior repair work, which, according to Appellants, included replacing rotted wood with "construction materials that were not rated for use in the interior of dwelling spaces." Complaint, 3/28/12, at ¶ 31. Appellants informed CMS of their concerns, but CMS did not advise Toomey to remediate this situation.

- 3 -

From September 2, 2010, to September 11, 2010, Toomey continued to perform repair work, which Appellants asserted was "not in compliance with applicable building codes." *Id*. at ¶ 32. "On September 11, 2010, [Appellants] requested to CMS that Toomey stop performing any further repair work on the interior of the Property due to Toomey's use of substandard materials and shoddy workmanship." *Id*. at ¶ 33. Toomey was permitted to perform outdoor work on the property through November 2010; no repairs have occurred on the Property since that time. *Id.* at ¶¶ 34–35.

On March 28, 2012, Appellants filed a complaint against Woodbridge, CMS, Toomey, Belfor, and Maurice J. Toomey[2] (collectively, "Appellees"), setting forth counts for negligence, breach of contract, and violations of the Uniform Condominium Act ("UCA"),[3] and the Pennsylvania Home Improvement Consumer Protection Act ("HICPA").[4] After the denial of preliminary objections, Appellees filed answers and new matter to the complaint in July 2012. The docket reflects discovery proceedings through April of 2013.

---

[2] It is not clear which Maurice J. Toomey was a defendant in this case. Maurice J. Toomey, II ("Toomey, II") and Maurice J. Toomey, III ("Toomey, III") have the same first, middle, and last names. Both were involved in Moe Toomey Construction, LLC. The complaint did not specify whether it was Toomey, II or Toomey, III who was sued. Regardless, Toomey, II died on March 23, 2014, and Toomey, III was deposed on October 26, 2017.

[3] 68 Pa.C.S. §§ 3101-3414.

[4] 73 P.S. §§ 517.1-517.18.

- 4 -

Nothing further occurred on the docket until March 29, 2016, when the Allegheny Department of Court Records issued a notice of intent to terminate this inactive case pursuant to Pennsylvania Rule of Judicial Administration 1901 and Pa.R.C.P. 230.2. On May 5, 2016, Appellants filed a counseled objection to the notice. On June 6, 2017, Appellees filed a motion to dismiss/motion for judgment of *non pros*. On July 31, 2017, the trial court denied Appellees' motion to dismiss but granted their motion for judgment of *non pros*. Order, 8/1/17.

On August 18, 2017, Appellants filed a petition for relief from the judgment of *non pros*, and the trial court issued a rule to show cause. The parties conducted depositions and submitted briefs to the trial court. By order entered April 9, 2018, the trial court reaffirmed its position that it had properly granted Appellees' motion for judgment of *non pros*, concluding Appellants neither prosecuted their claim with due diligence nor showed a compelling reason for the delay in prosecution. In addition, the trial court concluded that Appellees suffered substantial prejudice as a result of Appellants' delay. Trial Court Opinion, 4/9/18, at 3 (incorporating Trial Court Memorandum and Court Order, 8/1/17). Appellants timely filed a notice of appeal, and both Appellants and the trial court complied with Pa.R.A.P. 1925.

Appellants present the following questions for our consideration:

1. Did the court below commit an error of law or abuse of discretion in failing to grant relief to Appellants from the entry of *non pros* by finding a lack of due diligence when there was substantial evidence presented of activities undertaken in

furtherance of litigation that were not reflected in the docket entries?

2. Did the court below commit an error of law or abuse of discretion in failing to grant relief to Appellants from the entry of *non pros* by finding a lack of a reasonable excuse for the delay when there was substantial evidence presented that the delay was caused by [Appellants'] financial hardship and serious medical conditions?

3. Did the court below commit an error of law or abuse of discretion in failing to grant relief to Appellants from the entry of *non pros* by finding that the delay caused actual prejudice to Appellees?

Appellants' Brief at 2 (full emphasis omitted).

Overall, Appellants complain that the trial court erred or abused its discretion in denying their petition for relief from the judgment of *non pros*. We review this claim mindful of the following standards:

> A request to open a judgment of *non pros*, like the opening of a default judgment, is in the nature of an appeal to the equitable powers of the court and, in order for the judgment of *non pros* to be opened, a three-pronged test must be satisfied: 1) the petition to open must be promptly filed; 2) the default or delay must be reasonably explained or excused; and 3) facts must be shown to exist that support a cause of action. A petition under Pa.R.C.P. 3051 is the only means by which relief from a judgment of *non pros* may be sought. Any appeal related to a judgment of *non pros* lies not from the judgment itself, but from the denial of a petition to open or strike. The failure to file a timely or rule-compliant petition to open operates as a waiver of any right to address issues concerning the underlying judgment of *non pros*. Finally, a trial court's decision to deny a petition to open or strike a judgment of *non pros* is reviewed pursuant to an abuse of discretion standard.

*Bartolomeo v. Marshall*, 69 A.3d 610, 613–614 (Pa. Super. 2013) (internal citations and quotation marks omitted). To prevail on a petition for relief where a judgment of *non pros* is entered on the basis of docket inactivity, a

- 6 -

petitioner must satisfy the trial court that it: 1) proceeded with due diligence in prosecuting the claim; 2) has a compelling reason for the delay; and 3) has not caused actual prejudice to the defendant. Pa.R.C.P. 3051(c); **see also Jacobs v. Halloran**, 710 A.2d 1098, 1103 (Pa. 1998) (citing lack of due diligence, lack of a compelling reason for delay, and actual prejudice as bases for dismissing a case due to inactivity).

In the first question presented, Appellants argue that the trial court abused its discretion in concluding they failed to act with due diligence in prosecuting their claims. Appellants' Brief at 14–25. In support, Appellants detail their efforts to move this case forward between the last docket entry on April 11, 2013, and the March 29, 2016 notice of dismissal. Appellants submit the following non-docket activities as evidence of their due diligence:

> May 8, 2013 – Reviewed depositions; worked on discovery responses. May 9, 2013 – Reviewed file; prepared responses to discovery requests. Review draft of discovery responses in preparation for service; email to client regarding discovery responses. May 10, 2013 – Email from client regarding discovery responses. Telephone call from client regarding case status. Review discovery responses to include information provided by client and prepare for filing. May 17, 2013 – Review email from Attorney Lippl; review photographs; draft supplemental responses in response to attorney Lippl's email; draft letter to Attorney Lippl. Review and revise amended discovery responses. June 17, 2013 – Telephone call from client regarding possible change in litigation strategy[.] February 12, 2014 – Email exchange with client regarding moving forward with suit. February 13, 2014 – Telephone call from client regarding resuming active litigation. February 25, 2014 – Reviewed pleadings and file in order to prep for preparing first request for admission and production of documents[.] February 26, 2014 – Prepare first draft of request for admissions directed to Woodbridge for Attorney Bock's review. Review and revise initial draft of discovery requests. August 27,

2015 – Prepare supplementary discovery requests and revised deposition notices in preparation for moving forward with case.

Petition for Relief from Judgment of *Non Pros*, 8/17/17, at ¶ 14; Appellants' Brief at 10-11. Appellants contend that the trial court did not consider these efforts—or reflected "a bias against non-docket evidence"—in concluding the non-docket activity "did not advance the case in a meaningful way." Appellants' Brief at 18–19.

With respect to due diligence and non-docket activity, our Supreme Court has pointed out that:

> [a]lthough the docket provides an empirical, easily verifiable criterion to trigger review of a case, it is too crude a mechanism to distinguish truly inactive, stale cases from active ones where activity is not reflected on the docket. Dismissal of a case is far too harsh a result when the case is not actually stale but was moving slowly forward.

*Marino v. Hackman*, 710 A.2d 1108, 1111 (Pa. 1998). In *Marino*, the plaintiffs moved their case forward by "the taking depositions of all parties; … the exchange of letters seeking a settlement of the case; and, finally, a telephone discussion of certifying the case ready for trial." *Id.* at 1111.

Here, Appellants' non-docketed efforts fall short of the diligence presented in *Marino*. Initially, the litigation progressed quickly, as evidenced by the filing of a writ of summons and a complaint, the filing and resolution of preliminary objections, and the filing of responsive pleadings, all within the first eight months. Once discovery activity appeared on the docket in October of 2012, however, the sparse 2013 to 2015 activity on and off the docket does

not demonstrate that the case moved forward in any meaningful respect. On the contrary, it reveals that the case stalled sometime after April of 2013, when the trial court directed Appellants to respond to Belfor's discovery requests. No meaningful activity occurred again until the March 29, 2016 notice. There were no depositions, no settlement negotiations, no discussions of readiness for trial, no motions for discovery, no motions to compel discovery, no motions for sanctions. Based on the docketed and non-docketed activity of record, we conclude that Appellants failed to prosecute their claims with due diligence.

In the second question presented, Appellants argue that the trial court abused its discretion in concluding that they failed to establish a compelling reason for the delay in prosecuting their claims. Appellants' Brief at 25–30. Appellants contend they had compelling reasons for failing to move the case forward:

> [T]hey (1) suffered from a great financial burden of having to pay a mortgage, taxes, dues, utilities, and upkeep for the property at issue in this case, while having to live and carry on with daily expenses at another address and (2) . . . also suffered from certain medical conditions which have affected their finances and quality of life, including multiple surgeries.

*Id.* at 25-26.

The Pennsylvania Supreme Court has recognized "compelling reasons for delay . . . where the delaying party established the delay was caused by bankruptcy, liquidation, or other operation of law, or in cases awaiting significant developments in the law." *Marino*, 710 A.2d at 1111 (citing *Penn*

*Piping, Inc. v. Insurance Co. of North America*, 603 A.2d 1006 (Pa. 1992)); *see also Intech Metals, Inc. v. Meyer, Wagner & Jacobs*, 153 A.3d 406, 412 (Pa. Super. 2016) ("[R]easons for a delay, such as circumstances out of the party's control or ongoing depositions, discovery, changes in the law, etc., may explain any lack of diligence in failing to proceed with reasonable promptitude."). The *Marino* Court considered the following non-docketed circumstances as evidence of a compelling reason for the delay in prosecution: the death of plaintiffs' counsel; replacement of plaintiffs' second counsel because he was not moving the case forward; and third counsel's difficulty in obtaining the case file from second counsel and getting second counsel to withdraw his appearance. *Id.*

Here, the trial court concluded: "These arguments regarding the issues that [Appellants] have been dealing with during the prosecution of this case do not demonstrate a compelling reason for their delay." Trial Court Memorandum and Order of Court, 8/1/17, at 5. We agree.

The same attorney has represented Appellants since the inception of the case; therefore, unlike the plaintiffs in *Marino*, Appellants cannot rely on a problematic substitution of counsel as a compelling reason for delay. Moreover, although Appellants mention financial and medical reasons for the delay, they did not experience bankruptcy, liquidation, some other operation of law, or situations beyond their control; nor were they awaiting significant developments in the law. Appellants' reasons cannot overcome the fact that,

six years after the snow fell and four years after the litigation began, this case was no closer to disposition in March of 2016 than it was in 2013. Thus, we conclude that Appellants failed to present a compelling reason for the delay in prosecution.

In the third and final question presented, Appellants contend the trial court abused its discretion in ruling that the delay in prosecution resulted in prejudice to Appellees. Appellants' Brief at 31–33. According to Appellants, Appellees were not prejudiced because (1) "the pace and scope of discovery was always under the control of [Appellees]," *id.* at 32; (2) Appellees could have "kept track" of their witnesses, even those "potential witnesses [who] left their employment or ceased to be officers or directors[,]" and brought them "back at the time of trial, by subpoena if necessary." *Id.*; and (3) Appellees could have placed the case at issue; *id.* at 33.[5] Regarding the death of Toomey, II in 2014, Appellants acknowledge that his death "did deprive [Appellees] of an important witness." Appellants' Brief at 33. However, they maintain it was Appellees' responsibility to take action once they knew Toomey, II was dying. *Id*.

---

[5]  Contrary to their assertion that Appellees could have taken action to advance the litigation, Appellants, as plaintiffs, are charged with moving their case forward. ***Indep. Tech. Servs. v. Campo's Express, Inc.***, 812 A.2d 1238, 1240 (Pa. Super. 2002) ("The plaintiff in a case has an affirmative duty to move its case forward.") (citation omitted).

In response, Appellees highlight the testimony of the party representatives "deposed pursuant to the [c]ourt's Order of September 11, 2017, . . . to afford the Appellants a hearing on the question of whether Appellees had suffered substantial prejudice in this case." Appellees' Brief at 28, 29–31 (citing Deposition of Edward Golob, Jr. of CMS, 10/2/17; Deposition of Charles Eisenberg of Belfor, 10/2/17; Deposition of Toomey, III 10/26/17). According to Appellees, the deposition testimony demonstrates how Appellants' delay caused "a substantial diminution of [Appellees'] ability to properly present their defenses at trial." *Id.* at 29

Abandoning the presumption of prejudice first enunciated in ***Penn Piping***, the Pennsylvania Supreme Court held in ***Jacobs*** that a defendant must establish actual prejudice caused by the delay in prosecution in order to obtain a judgment of *non pros*. ***Jacobs***, 710 A.2d at 1103. Here, the trial court found that Appellees demonstrated actual prejudice:

> [F]or all [Appellees], the condition of [Appellants'] condominium after seven years without heat or air condition is likely to make assessing damages difficult, if not impossible. Individual issues include the turnover of employees for . . . Belfor, [CMS] and [Toomey], and the turnover of condominium council members for . . . Woodbridge. For . . . Toomey . . . the death of [Toomey, Sr.] in March 2014 amount to the loss of a witness (if not a party[.]). Collectively, these developments over time have resulted in substantial prejudice to [Appellees].

Trial Court Memorandum and Order, 8/1/17, at 5.

Our review of the record, specifically the deposition testimony, confirms the trial court's findings with regard to the unavailability of Toomey, II, the

difficult accessibility to former employees of Appellees, and the lack of knowledge or faded memory of Appellees' witnesses. Responsive Brief, 1/8/18, at attached Deposition Transcripts.

Notably, Appellants had ample opportunity to conduct a deposition of Toomey, II prior to 2014, but they did not. In addition, Appellants could have deposed any of Appellees' knowledgeable employees, as well, but they did not. Now, Appellants contend that Appellees are to blame for the condition of the Property after seven years and the lack of discovery. Despite their protestations to the contrary, Appellants' own unreasonable delay caused the unavailability or inaccessibility of material witnesses and evidence of the Property's condition. Accordingly, we agree with the trial court that Appellees proved actual prejudice.

Based on the foregoing, Appellants have failed to demonstrate that they acted with due diligence, had a compelling reason for the delay, and that Appellees did not suffer actual prejudice. Therefore, we conclude the trial court did not abuse its discretion in denying Appellants' petition for relief from the judgment of *non pros*.

Order affirmed.

Judge Strassburger did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/6/2019