J-A16025-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JOHN MORASKI AND KRISTINE MORASKI | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | No. 9 WDA 2024 |
| THERMO-TWIN INDUSTRIES, INC. | : | |

Appeal from the Order Entered December 14, 2023
In the Court of Common Pleas of Erie County Civil Division at No(s):
12355-2012

BEFORE:  KUNSELMAN, J., MURRAY, J., and McLAUGHLIN, J.

MEMORANDUM BY MURRAY, J.:                    **FILED: August 14, 2024**

John and Kristine Moraski (Plaintiffs) appeal from the order denying their petition to open the judgment of *non pros* entered in favor of Thermo-Twin Industries, Inc. (Thermo-Twin, or Defendant).  After careful review, we affirm.

Appellants' complaint alleged the following facts:

9. In or around the Spring of 2010, Plaintiffs were looking to purchase 2 new construction windows for the home that they were building at 11272 Lake Pleasant Road, Union City.

10. Plaintiffs contacted Defendant about their window needs because Defendant held itself out to the general public as a manufacturer of high quality new construction windows that would sell them factory direct to customers[.]

11. On April 13, 2010, Defendant made a sales presentation to Plaintiffs and, at the conclusion of that presentation, Plaintiffs signed Defendant's form sales agreement for the purchase of 27 new construction windows at a cost of $6,344.63. …

12. In relevant part, the sales agreement required Defendant to:

a. Manufacture and supply new construction vinyl clad windows of the identified type and model.

b. Manufacture the windows with quality materials and according to its specifications for the type and model of window purchased.

c. Manufacture the windows in a good and workmanlike manner and according to standard construction practices.

13. In addition to the duties undertaken through the sales agreement, Defendant supplied Plaintiffs with a Limited Lifetime Warranty that guaranteed that the windows should be free from defects in material and workmanship for a period of five years. …

14. On or about June 16, 2010, Defendant delivered the 27 new construction windows to Plaintiffs for Plaintiffs[] to install.

15. Upon inspection by Plaintiffs, it was determined that the windows were not manufactured to the proper specifications and that they were not free of defects in material and workmanship.

16. Plaintiffs notified Defendant of the defects and, on June 23, 2010, Plaintiffs and Defendant agreed that Plaintiffs would accept six of the windows for installation in the home's basement and that Defendant would manufacture 21 new construction windows to the same terms and conditions required by [the sales agreement] to replace the 21 that were rejected by Plaintiffs. …

17. Thereafter, Defendant delivered 21 new construction windows to Plaintiffs for Plaintiffs[] to install.

18. Upon inspection by Plaintiffs, it did not appear that the windows were manufactured to the proper specifications[,] and they did not appear to be free of defects in material and workmanship.

19. Plaintiffs contacted Defendant to report their concern that the windows were defectively manufactured[,] and they informed Defendant of the nature of the defects.

20. Defendant assured Plaintiffs that the windows were manufactured to specification, that they were not defective in material or workmanship, and that they were safe to install.

21. Relying on Defendant's representations about the quality and fitness of the windows, Plaintiffs installed the windows and then installed the vinyl siding on the exterior of the home.

22. Thereafter, Plaintiffs experienced numerous problems with all 21 of the windows. The problems have included: material failure, water leakage, air infiltration, and rattling.

23. Defendant has sent employees out to Plaintiffs' home to inspect the windows and Plaintiffs have spoken over the telephone with other employees of Defendant. Defendant's employees have confirmed that the windows were defectively manufactured.

24. Defendant's failure to supply windows that were free of defects in material and workmanship is a breach of the parties' contract[,] and it has caused damage to Plaintiffs.

Complaint, 7/2/12, ¶¶ 9-24.

On July 2, 2012, Plaintiffs filed a complaint, alleging breach of contract, breach of express warranty, and violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL).[1]

Thermo-Twin filed an answer and new matter on August 23, 2013. In its new matter, Thermo-Twin asserted, *inter alia*, that Thermo-Twin relied on measurements provided by Plaintiffs; it never declared any of the windows were defective; and the warranty does not cover damages or defects resulting from improper maintenance, alteration, or misuse. **See** Answer and New Matter, 8/23/13, ¶¶ 1-6. Plaintiffs filed a reply.

---

[1] 73 P.S. §§ 201-1 – 201-10.

The docket reflects minimal activity in the following years. On June 25, 2021, the trial court prothonotary issued a notice of proposed termination of court case. *See* Pa.R.Civ.P. 230.2 (Termination of Inactive Cases). Plaintiffs subsequently filed a praecipe for arbitration. The matter never proceeded to arbitration.

On October 16, 2023, the trial court prothonotary issued a second notice of proposed termination of court case. Plaintiffs responded by filing a statement of intention to proceed.

On November 22, 2023, Thermo-Twin filed a motion for entry of a *non pros* judgment, averring Plaintiffs failed to diligently proceed with the action in the eleven years since they filed the complaint. Motion for Entry of Judgment *Non Pros*, 11/22/23, ¶¶ 16-17. Thermo-Twin argued it was prejudiced by the delay "because memories have faded, witnesses have moved away, and employees who may have been involved in the project are no longer employed by Thermo-Twin." *Id.* ¶ 20. "Additionally, the condition of the windows in question and quality of the installation process is now also nearly impossible to discern given the fact that the windows were purchased in 2010." *Id.* ¶ 21.

Plaintiffs filed a response and a brief in support thereof. In part, Plaintiffs cited settlement discussions and the board of arbitrators' failure to schedule an arbitration hearing as reasons for the delay. *See* Response and Brief, 12/4/23, at 9-10.

On December 12, 2023, the trial court issued an opinion and order granting Thermo-Twin's motion for judgment of *non pros* and dismissing Plaintiffs' complaint with prejudice. The trial court noted that more than 13 years had passed since the events giving rise to the action had taken place. Opinion and Order, 12/14/23, at 5. The court also found that Plaintiffs failed to set forth compelling reasons for their delay, and that Thermo-Twin established actual prejudice resulting from the delay. ***Id.*** Judgment was entered on the docket on the same date.

Plaintiffs filed a petition to open the *non pros* judgment on December 13, 2023, which the trial court denied. This timely appeal followed. Plaintiffs and the trial court have complied with Pa.R.A.P. 1925.

Plaintiffs raise the following issues for review:

1. Did the trial court abuse its discretion by denying [Plaintiffs'] petition to open judgment of *non pros* when the record of the proceedings on the motion for judgment of *non pros* established that [Thermo-Twin] had waived its right to receive a judgment of *non pros*?

2. Did the trial court abuse its discretion by denying [Plaintiffs'] petition to open judgment of *non pros* when the petition alleged facts showing they had a meritorious cause of action?

3. Did the trial court abuse its discretion by denying [Plaintiffs'] petition to open judgment of *non pros* when the record of the proceedings on the motion for judgment of *non pros* did not establish that [Thermo-Twin] suffered actual prejudice caused by [Plaintiffs'] alleged delay in prosecuting their claims?

Plaintiffs' Brief at 4 (issued reordered).[2]

We review the court's denial of Plaintiffs' petition to open mindful of the following. "A request to open a judgment of *non pros* … is in the nature of an appeal to the equitable powers of the court…." ***Bartolomeo v. Marshall***, 69 A.3d 610, 613 (Pa. Super. 2013).

> The entry of a judgment of *non pros* and a subsequent request for relief from such judgment are governed by different tests. ***See Stephens*** [***v. Messick***, 799 A.2d 793, 797 (Pa. Super. 2002)].
>
> > To dismiss a case for inactivity pursuant to a defendant's motion for *non pros* there must first be a lack of due diligence on the part of the plaintiff in failing to proceed with reasonable promptitude. Second, the plaintiff must have no compelling reason for the delay. Finally, the delay must cause actual prejudice to the defendant. As always, this determination is to be made by the trial court, whose decision will not be disturbed absent an abuse of discretion.
>
> ***Jacobs v. Halloran***, … 710 A.2d 1098, 1103 ([Pa.] 1998); ***see James Bros. Lumber v. Union Banking & Trust***, … 247 A.2d 587, 589 ([Pa.] 1968) ("***James-Jacobs***" test).
>
> In contrast, a petition to open a judgment of *non pros* is governed by a different standard. Pennsylvania Rule of Civil Procedure 2051(c) provides as follows:
>
> **Rule 3051[.] Relief from Judgment of Non Pros**
>
> [* * *]

---

[2] Plaintiffs' Pa.R.A.P. 1925(b) concise statement states, in part, that their petition to open "did **not** allege facts showing they had a meritorious cause of action." Pa.R.A.P. 1925(b) Statement, 1/16/24, ¶ 1(c) (emphasis added). An acknowledgement of such failure would defeat Plaintiffs' claims. However, we, like the trial court, are cognizant that the statement of this claim may include a typographical error.

(c) If the relief sought includes the opening of a judgment of *non pros* for inactivity, the petition shall allege facts showing that

(1) the petition is timely filed,

(2) there is a meritorious cause of action, and

(3) the record of the proceedings granting the judgment of *non pros* does not support a finding that the following requirements for entry of a judgment of *non pros* for inactivity have been satisfied:

(i) there has been a lack of due diligence on the part of the plaintiff for failure to proceed with reasonable promptitude,

(ii) the plaintiff has failed to show a compelling reason for the delay, and

(iii) the delay has caused actual prejudice to the defendant.

Pa.R.C.P. [] 3051(c); **Stephens**, 799 A.2d at 798. Thus, in addition to challenging the court's application of the **James-Jacobs** test, a petitioner must also timely file his petition and assert a meritorious cause of action.

Both standards are subject to the same abuse of discretion standard of appellate review. …

**Intech Metals, Inc. v. Meyer, Wagner & Jacobs**, 153 A.3d 406, 410-11

(Pa. Super. 2016) (footnote omitted).

First, Plaintiffs argue Thermo-Twin waived its right to obtain a *non pros*

judgment because it failed to move for judgment in a timely manner, and its

conduct showed a willingness to try the case on the merits. Plaintiffs' Brief at

17. Plaintiffs claim Thermo-Twin did not object to their praecipe for arbitration

or move to strike the case from the trial court's arbitration list. **Id.** at 20.

Plaintiffs also assert Thermo-Twin actively participated in the scheduling process. *Id.*

"[A] party's right to seek a *non pros* may be waived when he indicates through his conduct a willingness to try the case on the merits notwithstanding the delay." *DeSiato v. Shahboz*, 419 A.2d 798, 800 (Pa. Super. 1980); *see also Jacobs*, 710 A.2d at 1103 ("A party who seeks the equitable relief provided by the entry of a judgment of *non pros* must do so with clean hands.").

Plaintiffs rely on this Court's decision in *DeSiato* to support their assertion. Therein, the plaintiff (DeSiato) filed a complaint in February 1966 alleging the defendant's breach of an oral contract, which the parties had entered into in June 1960. *DeSiato*, 419 A.2d at 799. The defendants responded by filing an answer, new matter, and counterclaim. *Id.* The case "remained dormant" for several years. *Id.* The parties agreed to submit to arbitration and, in February 1975, the arbitration panel awarded a verdict to DeSiato. *Id.* In late February 1975, DeSiato appealed the arbitration verdict to the common pleas court. *Id.* The trial took place in June 1975, "more than fourteen years after the cause of action accrued and more than nine years after the [c]omplaint had been filed." *Id.* The defendants filed a motion for compulsory nonsuit at the close of DeSiato's case, which was denied. *Id.* at 800. The defendants later requested the entry of a judgment *non pros*, *nunc pro tunc*, which the trial court also denied. *Id.*

This Court explained,

[t]he rationale behind [a party's waiver of the right to seek a *non pros*] is that both parties have an obligation to assert their legal rights with promptness so that it would be inequitable to grant a *non pros* to a defendant who believed that the plaintiff abandoned his action and yet who still manifested an intention to pursue the merits of the cause and allowed the plaintiff to incur the expense of bringing the case to trial.

*Id.* The **DeSiato** Court concluded the defendants had waived their right to seek entry of *non pros* by waiting until the jury trial to request it. **Id.**; **see also id.** (emphasizing that the defendants "had participated in the pre-trial conference, had agreed to have the case submitted to arbitration, had participated in an arbitration hearing, had placed the case on a trial list, had picked a jury, and had proceeded to trial.").

Plaintiffs' reliance on **DeSiato** is misplaced. Thermo-Twin acknowledges its participation in "the brief discovery exchange." Defendant's Brief at 6; **see also id.** (indicating Plaintiffs served discovery requests in April 2019, and Thermo-Twin served its own discovery requests at approximately the same time). However, unlike the defendants in **DeSiato**, Thermo-Twin did not extensively participate in pre-trial proceedings, participate in arbitration, and then seek to overturn an unfavorable arbitration award. Thus, we conclude Thermo-Twin did not waive its right to seek entry of a judgment of *non pros*. Plaintiffs' first claim merits no relief.

Plaintiffs' remaining claims concern whether the trial court improperly denied their petition to open the judgment of *non pros*. In their second claim,

Plaintiffs contend their petition to open established a meritorious cause of action.[3] Plaintiffs' Brief at 22. Plaintiffs refer to a report prepared by their construction expert, which they attached to their petition to open. *Id.* at 23. According to Plaintiffs, the expert "stated his opinion that the windows had to be removed and replaced with non-defective windows, defined the appropriate repair scope of work, and provided costs for the materials and labor." *Id.*

As this Court has explained,

> [t]o show that a cause of action is meritorious, under Rule 3051(c)(2), facts must be shown to exist which support a cause of action. A petition that merely repeats the averments from the complaint does not satisfy the meritorious cause of action requirement in Rule 3051(c)(2).

*Intech Metals*, 153 A.3d at 411 (citations and quotation marks omitted).

Instantly, in their petition to open, Plaintiffs include only a brief argument that their cause of action is meritorious. Plaintiffs summarily restate their argument (in less detail than that included in the complaint) that Thermo-Twin provided defective windows. *See* Petition to Open, 12/13/23, ¶¶ 15-19. Plaintiffs attached a report dated December 12, 2023 (claim report), which was prepared by David Karotka, a claims adjuster for Castle Claims Service. *See id.*, Exhibit B. Mr. Karotka stated his inspection of the windows "revealed a lack of flashing on all the windows. The lack of flashing

---

[3] We note that Plaintiffs do not specifically address the timeliness of their petition to open in their appellate brief. Because Plaintiffs filed their petition to open the day after the trial court entered judgment, the first requirement of Rule 3051(c) was satisfied.

makes the windows susceptible to water infiltration…." *Id.*, Exhibit B at 2 (unnumbered). Mr. Karotka also noted that six of the windows did not close and latch completely. *Id.* The claim report details the work necessary to replace the allegedly defective windows and provides an estimated repair cost of $18,651.11. *Id.*

Though Plaintiffs refer to Mr. Karotka as an expert, they failed to detail Mr. Karotka's qualifications, or explain how the report supports their cause of action.[4] Plaintiffs failed to support their factual averments with specific facts elicited during discovery.[5] Because Plaintiffs provided little more than a restatement of the factual averments of their complaint, we conclude Plaintiffs have failed to show their cause of action is meritorious. *See Intech Metals*, 153 A.3d at 411; *see also Stephens*, 799 A.2d at 800 (concluding the appellant did not sufficiently establish she had a meritorious cause of action where "[s]he did not aver any specific facts elicited during discovery" or attach deposition testimony or expert reports to support her claims).

As this Court has stated, an appellant's "failure to show facts to exist that would support a meritorious cause of action in their petition to open,

---

[4] Indeed, it is not apparent whether the report was prepared in anticipation of trial, or whether it was simply intended to provide Plaintiffs an estimate for repair work.

[5] We observe Plaintiffs point to no discovery efforts. Plaintiffs do not refer to any specific documents, depositions, or other facts obtained during discovery. *See generally* Plaintiffs' Brief at 23 (referencing the averments contained in the petition to open, the expert report, "and the other documents").

operates as a waiver of the issues concerning the underlying interlocutory order." ***Intech Metals***, 153 A.3d at 412 (citing ***Stephens***, 799 A.2d at 798 and Pa.R.C.P. 3051(c)(2)). Thus, Plaintiffs' failure to establish a basis for relief on their second claim is dispositive, and we need not separately address their final claim (concerning actual prejudice to Thermo-Twin). ***See Intech Metals***, 153 A.3d at 412, 414.

Based upon the foregoing, we conclude the trial court did not abuse its discretion in denying Plaintiffs' petition to open the judgment of *non pros* entered against them. We therefore affirm the trial court's order.

Order affirmed.

Judge McLaughlin joins the memorandum.

Judge Kunselman concurs in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

8/14/2024